WILLIAM K. SEELEY AND ANOTHER *vs.* THE TOWN OF WEST-
PORT AND ANOTHER.

While it is a general rule that a court of equity will not interfere to restrain the
collection of taxes, yet it will not refuse to restrain a tax collector by injunc-
tion where the party against whose property he is proceeding is not the tax-
debtor and the property is not that on which the tax was laid.

*A* occupied and claimed title to certain real estate and put it into her tax list as
her own, with other real estate belonging to her.  It was afterwards adjudged
that the title to the property in question was not in her, but in *G*, from whom
the petitioners received the title.  At the time the tax fell due and for a long
time after *A* had property which might have been taken for the tax.  The
tax collector now threatened to levy on the property in question for the entire
tax of *A*, that part which belonged exclus'vely to this property not being
ascertainable.  Held that the collector should be enjoined against proceeding
to sell the property.

A man may protect his land from sale upon a tax-warrant or from a cloud on
his title by a tax lien, by paying the tax and suing to recover it back.  Such
a payment is not to be regarded as a voluntary one.

But this legal remedy is not such an adequate one as to debar a party from a
remedy by injunction, where the case is otherwise one in which, upon the above
principles, he would be entitled to such equitable remedy.

The cases of *Sheldon* v. *South School District,* 24 Conn , 88, and *Waterbury Sav-
ings Bank* v. *Lawler,* 46 Conn., 243, commented on.

PETITION for an injunction against a levy on the property of
the petitioners for sundry taxes by the tax collector of the
respondent town; brought to the Superior Court in Fairfield
County.  The respondents demurred to the petition, and the
court (*Hovey, J.*,) overruled the demurrer and passed a decree
in favor of the petitioners.  The respondents thereupon filed
a motion in error and brought the record before this court.
The case is sufficiently stated in the opinion.

*R. E. De Forest,* for the plaintiffs in error, cited *Dodd* v.
*City of Hartford,* 25 Conn., 232; *Arnold* v. *Town of Middle-
town,* 39 id., 401; *Rowland* v. *First School District of Weston,*
42 id., 30; *Waterbury Savings Bank* v. *Lawler,* 46 id., 243.

*W. K. Seeley* and *E. W. Seymour,* for the defendants in
error, cited *Sheldon* v. *South School District,* 24 Conn., 88;
*Goddard* v. *Town of Seymour,* 30 id., 395, 401; Cooley on

Taxation, 543; *Palmer* v. *Rich*, 12 Mich., 414, 419; *Schofield* v. *Lansing*, 17 id., 437, 447; *Dean* v. *Madison*, 9 Wis., 402; *Mitchell* v. *Milwaukee*, 18 id., 99, 104; *Crane* v. *Janesville*, 20 id., 305; *Siegel* v. *Supervisors &c.*, 26 id., 70; *Scott* v. *Onderdonk*, 14 N. York, 9; *Crooke* v. *Andrews*, 40 id., 547; *Jennings* v. *Collins*, 99 Mass., 29; *City of Washington* v. *Pratt*, 8 Wheat., 681.

CARPENTER, J. This is a petition to restrain the town of Westport, its officers and agents, from collecting certain taxes by a levy and sale of certain real estate called Compo Place, now belonging to the petitioners. During the years 1874–5–6 the real estate was in the possession of one Mrs. Alden, who claimed title to it and put it in her list of taxable property for those years. The taxes now claimed were assessed upon this and other real estate owned by Mrs. Alden in such a manner that the amount assessed upon Compo Place cannot now be ascertained. It was subsequently judicially determined that the title to Compo Place was not in Mrs. Alden but in Mrs. Trubee, from whom the petitioners derived their title. During the years mentioned, and during the time for the collection of the taxes levied in those years, Mrs. Alden was possessed of sufficient other property in the town from which the taxes might have been collected. The collectors failed to collect them, and now the town insists upon its right to collect all the taxes, including those assessed on other property, from Compo Place, and the collector has levied his tax-warrants thereon for that purpose. These taxes were assessed against Mrs. Alden and no taxes for those years were assessed against Mrs. Trubee. This is the substance of the petition, at least sufficient perhaps for a fair understanding of the questions involved. The respondents demurred. The Superior Court overruled the demurrer and granted the prayer of the petition. The case comes before this court on a motion in error.

The question is, whether under the circumstances a court of equity will interfere to restrain the collection of the taxes of the petitioners.

On three occasions within the last few years this court has refused an injunction to restrain the collection of taxes. *Arnold* v. *Middletown*, 39 Conn., 401; *Rowland* v. *The First School District of Weston*, 42 Conn., 30; *Waterbury Savings Bank* v. *Lawler*, 46 Conn., 243.

The last named case goes further and is perhaps stronger against the petitioners than either of the other two. From it the respondents virtually claim that a court of chancery will in no case interfere to restrain the collection of an illegal tax or the improper collection of a legal tax. The language of the opinion if divorced from the facts of the case may give some countenance to this claim. If however the facts are kept in view, and the opinion is regarded as disposing of that case simply, without intending to go beyond that and lay down a rule binding in other and different cases, it cannot justify the claim made. If otherwise, and the doctrine is really established as broadly as contended, it is high time that we come to a pause and consider whether we have not gone too far—whether we have not in fact imperiled the rights of the citizen by placing them at the mercy of those who are in authority. We understand the authorities to hold that the tax collector will not ordinarily be interfered with by an injunction so long as he is attempting to collect taxes of the *person* against whom, or the *property* on which, they were assessed; in other words, so long as he is acting within the apparent scope of his authority. But this immunity has not been and may not be extended to a collector who is acting outside the limits of his authority. We cannot therefore consent to cast off all restrictions and limitations and say that a tax collector will not be restrained from collecting any tax of *any person* or from *any property* he pleases, and that the party aggrieved will be remitted to his remedy at law; and that too notwithstanding any laches of the authorities in omitting to collect at the proper time and of the proper person. That this is not too broad a statement of the claim is apparent from the facts of the case.

A portion of these taxes were assessed on other property of Mrs. Alden's. All were long since overdue, and it is now

at least doubtful whether any part of them is in any sense a lien on the petitioners' property. The authorities have had a reasonable and ample opportunity to collect the whole of Mrs. Alden. They omitted to do so, and now attempt to compel the petitioners, utter strangers to a portion of the taxes at least, to pay the whole or submit to a sale of their lands.

That this court did not intend to deprive the Superior Court of the power to grant injunctions in extreme cases—and we regard this as an extreme case—we think is apparent from the language used in the cases referred to. In *Arnold* v. *Middletown* the language is, " Such an interference" (an interference by an injunction) "might, at times, be dangerous to the safety of the state, and is not to be resorted to except for the most imperative reasons." In *Rowland* v. *The First School District of Weston*, the marginal note is, "A court of equity will not, except in an extreme case, interfere by injunction with proceedings for the collection of taxes." In the case of *Waterbury Savings Bank* v. *Lawler*, the tax was assessed on property mortgaged, against the mortgagor. The mortgage had been foreclosed and the tax-warrant was levied on the property after the title had become absolute in the mortgagee. The court, in reply to the suggestion that it was a third party applying for an injunction, whose property was to be taken for the taxes of another, said with emphasis that the proceedings were against the " *identical property on which the taxes were assessed*," and thereby distinguished it from the " flagrant case suggested," of attempting to collect one person's tax out of another or out of property which had no legal connection with the taxes in question. We now have that identical " flagrant case," and it seems to be carefully excluded from the scope of that decision by the concluding sentence of the opinion, which is as follows:—" When therefore the tax collector, as in this case, proceeds against either the proper person or the proper estate to obtain the taxes, and adopts the usual and regular methods of procedure, we see no good reason why it does not contravene the rule of public policy to interfere with the proceedings by injunction, as much in one case as in the other."

In the case before us, the proceedings being neither against the proper person nor the proper estate in any just sense, we must regard them as not within the scope of the collector's powers.

We conclude therefore that neither considerations of expediency nor reasons of public policy required the court to refuse the injunction, while the manifest injustice of requiring one man to pay the taxes of another, when neither he nor his estate bears any legal relation to the taxes assessed, imperatively demands this specific remedy, unless there is adequate remedy at law. This brings us to a consideration of that question.

The legal remedy, if one exists, is found in one of two forms, or possibly in both; by paying the tax to prevent a sale of the land and bringing a suit to recover it back, or by allowing the sale to be consummated and then resisting the title of the purchaser. The first is the ordinary mode of proceeding when a levy is made on personal property. It has been supposed that that remedy was not open to a party when a tax-warrant is levied upon real estate, under the authority of *Sheldon* v. *The South School District in the West Society of Suffield*, 24 Conn., 88. It may be doubted whether that decision was intended to go so far as that. However that may be, so far as our present purpose is concerned it may well stand as a correct disposition of the matter then before the court. In that case the money was paid, not to avoid imprisonment or the sale of goods, nor even to prevent the sale of lands. The plaintiff rather became a party to the sale by becoming a purchaser and accepting a deed. The court say, "the money was paid rather to perfect the sale than to prevent it." Under the circumstances the court held that it was a voluntary payment and not a payment by duress. But that is hardly an authority for the position that a payment of money to *prevent* the sale of lands to enforce an unjust and illegal demand is a voluntary payment. There would seem to be quite as much reason for a man to protect his land in that way as personal property.

But if this distinction is untenable, and that case is to be

regarded as an authority for the doctrine that any payment of money to prevent the sale of one's real estate is necessarily a voluntary payment, it is worthy of serious consideration whether that case, in view of our recent decisions, to that extent ought not to be overruled. Since that decision was promulgated we have held, in the decisions already referred to, that ordinarily a court of chancery will not interfere to restrain the collection of a tax. If now, being deprived of that remedy, the law is so that he may not pay the demand to prevent the sale of his real estate and contest the legality of the tax in a suit to recover it back, there remains but one course open to him, and that is to submit to the sale and resist the title of the purchaser as best he may. What consequences follow? The litigation in all such cases is transferred from the town or other corporation where it properly belongs, to the purchaser. He, knowing that he is buying a lawsuit, offers only a nominal price for the land, and it must be sold at a ruinous sacrifice. If the tax-debtor succeeds in defeating the title the town collects the tax of the purchaser, and he has in addition to that the burden of paying for unsuccessful litigation. If the purchaser sustains his title the tax-debtor loses his land at a mere nominal price. It is neither wise nor just to shut up a party to a remedy productive of such consequences.

We think therefore that the law is so that a man may protect his land from a sale, or prevent a cloud upon his title, by paying the tax and have his remedy to recover it back if the tax was illegal and unjust. But conceding that a party has that remedy, it by no means defeats the present action.

We doubt the justice or propriety of turning a party around as to his remedy in the face of the decision in *Sheldon* v. *The South School District*. In view of that case the remedy at law was not entirely clear and in that sense at least was not adequate and complete. If therefore there was nothing else in the case we might hesitate to dismiss the bill on that ground.

But there is another consideration which seems to us conclusive upon that point. Thus far we have treated this question as though these petitioners were the tax-debtors,

either as being the persons against whom the taxes were assessed, or as owning the land now liable for them. Whereas the fact is, that in respect to a portion of the taxes now demanded, if not the whole, they are in no sense liable. The attempt therefore to collect that portion of the taxes of the petitioners is an unmitigated wrong, and the principles which apply to an ordinary party who primâ facie owes the tax, has no application to these petitioners. The rate-bill and tax-warrant are no excuse for, much less a justification of, an attempt to deprive these petitioners of their property or becloud their title. It cannot be tolerated that a mere wrong-doer without justification or excuse, contemplating an injury of this description, may say to the party, "You have no preventive remedy; you must either pay the money demanded or submit to the wrong and seek such redress as may be left to you afterwards."

There is no error in the judgment of the court below.

In this opinion the other judges concurred.