GEORGE D. PHELPS *vs.* ALFRED L. F. THURSTON AND OTHERS.

The plaintiff, a resident of another state, but who had a summer residence in the town of *S* in this state, handed in an assessment list in that town, containing his real estate and a few articles of personal property. The assessors added to his list "3 horses, $300; 4 carriages and wagons, $500," and gave him notice of the addition. He did not apply to the board of relief or take other measures for the correction of the list, bnt upon demand made for the tax by the collector, refused to pay it, and the collector levied upon and sold his property for the tax. In trespass brought against the selectmen of the town, who had signed the rate-bill and procured the tax-warrant, it was held—

1. That the plaintiff's personal property was not taxable in *S*.
2. That in voluntarily placing certain personal property in his list he had not impliedly consented that other personal property owned by him there should be added to his list.
3. That he had waived no rights with respect to the property so added, by neglecting to apply to the board of relief.
4. That the selectmen were not liable in trespass.
5. That the plaintiff could have paid the tax when threatened with the levy, and have sued the town in assumpsit for any illegal portion of it that he had been compelled to pay.

TRESPASS *de bonis asportatis*, brought to the Court of Common Pleas of Hartford County, and tried to the court, on the general issue, with notice, before *Calhoun, J.* The court found the following facts.

In the month of October, 1877, the plaintiff handed to the assessors of the town of Simsbury the following assessment list:—

"Taxable list of George D. Phelps, of Simsbury, for 1877.
"2 Dwelling-Houses,    -    -    -    -
"8 Acres of Land, -    -    -    -    -
"1 Cow,    -    -    -    -    -    -
"1 Piano-Forte, and other musical instruments
    not exempt, exceeding $25," -    -    -

The plaintiff owned some real estate in Simsbury, consisting of a farm and dwelling-house, which had belonged to his father, then deceased. He had upon his farm several horses, cows, and other animals, and several wagons and carriages. The plaintiff was not a resident of Simsbury, but of the city of New York. He was by the assessors of Simsbury treated as a non-resident, and was enrolled as such by them upon their tax-lists and abstracts, and was so named in the rate-bill hereinafter mentioned. During the time of all the matters in dispute in this suit, he was taxed upon all his personal property in the city of New York. He had been in the habit of spending three or four months in the summer and fall of each year in Simsbury, but had lived, voted, and paid taxes in New York for many years.

The assessors added to his list, "3 horses, $300; 4 carriages and wagons, $500." He owned these items of property on the first of October, 1877. The four vehicles and two of the horses had belonged to the estate of his father; the former had been kept in Simsbury several years continuously by the plaintiff; two of the horses had been kept by him part of the time in Simsbury and part of the time in New York. The other horse was bought by the plaintiff in May, 1877.

All of the personal property was in the town of Simsbury during the month of October, 1877. The plaintiff had at

some time before paid taxes in Simsbury on all the personal property thus added to his list, except on the horse bought in May, 1877. The assessors mailed December 20th, 1877, a notice of the above additions to his list, directed to the plaintiff in New York; which notice he received. The plaintiff paid no attention to the notice, nor did he make application to the board of relief for any correction of his list, and none was made.

The town of Simsbury laid a tax on the grand list of 1877, of twelve mills on the dollar, and the defendants, who were a majority of the selectmen of the town, made out and signed a rate-bill for its collection. The amount of the tax included therein and assessed against the plaintiff, upon his list added to as above, was $108.84. The selectmen obtained from a justice of the peace a warrant for the collection of all the taxes, and delivered the same to Edward F. St. John as collector. St. John demanded of the plaintiff the tax of $108.84; the plaintiff replied that the assessors had added illegal items to his list, and that he desired to consult counsel, which he did soon after, but finally refused to pay the tax. St. John then levied upon the plaintiff's oxen and sold them at auction on the 1st of June, 1878. It was for the taking of these oxen that the present action was brought.

The value of the oxen was $175. The collector deducted from the proceeds of the sale the amount of the tax and expenses, and returned a balance of $6.38 to the plaintiff.

Upon the foregoing facts the defendants claimed as matter of law—1st. That the additions to the plaintiff's list were proper and legal, though he was a non-resident of Simsbury in October, 1877. 2d. That the defendants were not liable in the action of trespass if such addition was not legal. But the court overruled these claims and rendered judgment for the plaintiff for the value of the oxen, less the sum returned to him by the collector.

The defendants brought the record before this court by a motion in error.

*C. B. Andrews* and *W. C. Case*, for the plaintiffs in error.

1. The addition made by the assessors to the plaintiff's list was lawful. The plaintiff owned real estate in the town of Simsbury; all the personal property on which the taxes were laid was actually in that town at the time. Upon all of it, except the horse recently purchased, he had before this voluntarily paid taxes in that town. In·the year 1877 he handed in to the assessors a list of his taxable property in that town, in which list he named some personal property. The assessors added to that list the other personal property owned by him, and which was actually situated in that town. This was what they were commanded to do by the statute. Gen. Statutes, p. 153, sec. 5. Even if it is not clear that the assessors were commanded by the statute to make such addition, they certainly had jurisdiction so to do. By having voluntarily paid taxes on this very property in that town in previous years, and by handing in a list, the plaintiff conferred jurisdiction on the assessors to act upon it in the same manner and to the same extent as by law they could do upon the list of a resident. *Goddard* v. *Seymour*, 30 Conn., 394; *Ives* v. *North Canaan*, 33 id., 402; *Motz* v. *Detroit*, 18 Mich., 495; Cooley on Taxation, 573.

2. But·the plaintiff has admitted the rightfulness of the acts of the assessors by not pursuing the remedy pointed out by law. By handing in the list he conferred upon the assessors jurisdiction to some extent. Now, the assessors having a rightful jurisdiction, and that too by the act of the plaintiff himself, if he is aggrieved by any act of theirs he must pursue the remedy pointed out by the statutes, that is, apply to the board of relief, and then by an appeal from their action to the Superior Court. In this way he could have obtained a complete remedy for any wrong that the assessors had attempted. There is no practice anywhere that will permit a party to go voluntarily into a court and, after the judgment is rendered, if it happens to be against him, plead to the jurisdiction.

3. The assessors having a rightful jurisdiction in this case, their act in determining what property was subject to taxation was a judicial act, and cannot be called in question. Assessors act judicially in determining what persons are liable

Phelps *v.* Thurston.

to taxation and what property is subject to and what is exempt from taxation.   Our statute exempts the estate of a blind person unable to work, to the amount of $3,000, and makes various like exemptions.   It cannot be doubted for an instant that in determining as to these persons the assessors act judicially.   Indeed, the acts generally of the assessors are judicial in their nature.   *Barhyte* v. *Shepherd*, 35 N. York, 238; *Brown* v. *Smith*, 24 Barb., 419; *Vose* v. *Willard*, 47 id., 320; *Bell* v. *Pierce*, 48 id., 51.

4.   The defendants are not liable in the action of trespass. The statute makes it their duty to sign the rate-bills.   Gen. Statutes, p. 162, sec. 4.   They may be compelled to do it by mandamus.   *Amy* v. *Supervisors*, 11 Wall., 136.   And are made liable to a fine if they neglect it—and by the statute they are to make the rate-bills "according to the assessment lists."   Public policy forbids that any officer of the law should be made personally liable for any act done in the discharge of his duty.   Even erroneous official acts are only actionable when they spring from a bad motive.   *Luddington* v. *Peck*, 2 Conn., 701; *Burton* v. *Fulton*, 49 Penn. St., 151; *Cullen* v. *Morris*, 2 Stark., 577; *Pater* v. *Baker*, 3 M., G. & S., 831. The judgment below involves a complete *reductio ad absurdum*. It says that the law makes these defendants liable in trespass for doing an act which the very same law commanded them to do under the penalty of a fine.   *Clark* v. *Axford*, 5 Mich., 182; *Am. Print Works* v. *Lawrence*, 1 Zabr., 248, and 3 id., 600.   The defendants are protected by the fact that they acted on a finding by duly authorized authority and which was fair and legal on its face; just as the constable who served the tax warrant is protected, because he had a command issued by proper authority and which was lawful on its face.   The command to the constable to do what he did emanated from no higher source than did the command to the defendants to do what they did.   *Radcliff's Exrs.* v. *Mayor &c. of Brooklyn*, 4 Comst., 195; *Cast Plate Manufacturers* v. *Meredith*, 4 T. R., 794; *Sutton* v. *Clarke*, 6 Taunt., 29; *Boulton* v. *Crowther*, 2 Barn. & Cress., 703.   The case of

*Thames Manuf. Co.* v. *Lathrop*, 7 Conn., 550, which is relied upon by the counsel for the plaintiff, was decided wrong. The reasons given do not sustain the conclusion. But if it was decided correctly on the facts there found it does not form a precedent for the decision in the case at bar. There the defect was one which appeared on the face of the list and went to the correctness of the entire list. Here the list on its face was correct, and at most the defect only affected the tax of one man. The selectmen can not make exceptions in a list apparently fair. Again, in that case, by reason of a ministerial error of the assessors, there was absolutely no assessment list, and if there was not the selectmen were not compellable to issue the rate-bill. In the case at bar the error of the assessors, if there was any, was a judicial one with regard to the list of one man and did not invalidate the rest of the list. The selectmen could not revise this error; they could not even detect it; and they had no power to do otherwise than sign the rate-bill.

*L. E. Stanton*, for the defendant in error.

1. The additions to the list of the plaintiff made by the assessors were unlawful. The plaintiff was a non-resident. The personal property of a non-resident is not taxable in this state. *Bailey* v. *Goshen*, 32 Conn., 546. It is not at all a question whether the legislature could tax the personal property of a non-resident. They have not taxed it in fact. Except as to shares of stock in certain corporations we have no law taxing the personal property of non-residents although located in this state. On the contrary it is the intention of our statutes to exempt it from taxation. Gen. Statutes, p. 153, sec. 4; id., p. 156, secs. 13, 14; *Sprague* v. *Lisbon*, 30 Conn., 18. The fact that the personal property of the plaintiff was in Simsbury when the list was made up makes no difference, nor the fact that it was protected in this state. Taxation is wholly a matter of statute. Of course the statutes call for a tax list against a non-resident. He may own real estate in this state. This is of course taxable. The 5th section of the statute, which provides for additions to lists of

non-residents by the assessors, only provides that their taxable property may be added to their lists if they have left it out. Stock in a national bank may be taxed in the town where the bank is located, and therefore may be added if left out.   So a piece of real estate, or any other taxable property of a non-resident, may be added to his list under that section, if he has omitted it.   The defendants contend that this section renders the personal property of a non-resident taxable in this state. But the section does not define what is taxable or not taxable. It only provides how taxable property shall be added to the list.   The assessors are not to decide what is taxable.   They are only to add such property as the law has declared to be taxable.

2.   The plaintiff has adopted the proper remedy.   He has followed and relied upon an express decision of this court with respect to it.   *Thames Manf. Co.* v. *Lathrop*, 7 Conn., 550.   It is said that he might have brought assumpsit against the town.   But his oxen were unlawfully taken and sold.   It is a trespass.   Some one committed it.   The collector was protected by his warrant.   The court below decided that the selectmen are the trespassers in such a case.   They signed the rate bill and procured the tax warrant and delivered it to the collector.   The Supreme Court of Massachusetts has held the same doctrine against assessors.   *Stetson* v. *Kempton*, 13 Mass., 272; *Libby* v. *Burnham*, 15 id., 144.   We may waive the tort and sue in assumpsit.   But we are not obliged to waive it.   *Bailey* v. *Goshen*, supra.   The tax was unlawful; the court will not turn us around for having brought trespass instead of assumpsit, when we have followed the decision of the court.   As the tax was unlawful in part the whole of it should be recovered back.   *Hubbard* v. *Brainard*, 35 Conn., 563; *First Eccl. Society* v. *Town of Hartford*, 38 id., 289. As the action was trespass, the court reached the same result by giving the plaintiff the value of his oxen at the date of the trespass, less the small surplus which was returned to him.

CARPENTER, J.   The plaintiff resides in the city of New

York.   He owns a farm in the town of Simsbury in this state. In the year 1877 he handed to the assessors of Simsbury a list of what purported to be his taxable property in that town, under oath.   That list contained his real estate in Simsbury and a few items of personal property owned by him there. The assessors added to the list three horses and four carriages, all valued at $800, and gave the plaintiff notice.   He paid no attention to the notice, and in due time the collector presented the taxes assessed against him, including taxes for the personal property thus added by the assessors.   He refused to pay and the collector levied on the personal property described in the declaration and sold it.

This suit is trespass for taking and selling the property, and is brought against the selectmen.   The court below rendered judgment for the plaintiff to recover the value of the property.

The defendants allege two grounds of error; first, that all the property was legally assessed, and second, that the defendants are not liable in trespass.

1.   It is conceded as a general rule that the personal property of a non-resident is not taxable.   But the defendants insist that the plaintiff himself submitted all his personal property in Simsbury to the jurisdiction of the authorities of that town for the purposes of taxation, and that he cannot now be heard to complain that it was not taxable.   In support of this claim *Goddard* v. *Seymour,* 30 Conn., 394, is cited.

In that case the plaintiff was a non-resident.   His agent in Seymour included in his list one item of personal property valued at $20,000.   The assessors raised its valuation, so that it finally stood at $30,000, and the tax was assessed and collected accordingly.   Assumpsit was brought to recover it back. The court held that it was properly assessed on the ground that he had submitted the whole matter, including the valuation, to the jurisdiction of the assessors and board of relief.

That case seems to have been well considered, and if this case was strictly analagous we might feel constrained to apply it.   But between that case and this there is one important difference—in that, the assessors increased the valuation

of an item which the plaintiff put in his list, thereby placing it within their jurisdiction—in this, the assessors added property which the plaintiff did not put into his list, and over which they had no jurisdiction. We are disposed to regard this distinction as material.

If the plaintiff chose to consent that any portion of his personal property might be taxed in Simsbury he had a perfect right to do so; but his right was equally good to limit the portion so to be taxed, and he did so limit it. By exceeding that limit the assessors exceeded their jurisdiction.

It is further claimed that the plaintiff, by omitting to apply to the board of relief, and to appeal to the Superior Court under the statute of 1878, has waived his remedy, and has now no redress. The act of 1878 did not take effect in season for the plaintiff to have availed himself of it. The fact that he might have applied to the board of relief and failed to do so is no bar to a suit to redress a wrong inflicted by collecting an illegal tax. Otherwise the plaintiff would be deprived of his day in court, which he is clearly entitled to.

We think the court below correctly decided that the tax was illegal to the extent of the additions made by the assessors.

2. Are the defendants liable in trespass? The court below, upon the authority of *The Thames Manufacturing Company* v. *Lathrop*, 7 Conn., 550, held that they were. We think that case is distinguishable from this and ought not to control it. The defect in that case was the omission of the assessors to return the list to the town clerk within the time prescribed by law, so that the illegality extended to the entire list. In this case the assessment list as a whole was regular, formal and legal. The objection is that two small items constituting a small fraction of the plaintiff's list were improperly taxed. In the former in contemplation of law there was no assessment list, nothing to require or justify a rate-bill. In the latter there was a legal and valid list, (including in it property exempt from taxation or omitting property which was taxable did not vitiate it)—a list which required and would therefore justify a rate-bill. A list abso-

lutely perfect, including everything taxable, and nothing not taxable, is well nigh an impossibility. From necessity therefore such additions and omissions cannot vitiate. It follows that the selectmen could not for any such reason excuse themselves for neglecting to sign a rate-bill, being required to sign one by positive statute law enforced by a suitable penalty.

It would be absurdly unjust thus to compel them to sign a rate-bill and hold them liable therefor in trespass on account of mistakes and errors of the assessors and board of relief, officers over whom they have no control, and whose mistakes and errors they have no power to correct.

It does not follow that the plaintiff is without remedy. He might when threatened with the levy have paid his tax, nine-tenths of which was justly due, and then, if he had been compelled to pay more than was just, an action of assumpsit against the town would have been a plain and effective remedy.

In holding the selectmen liable the court below erred, and the judgment must be reversed.

In this opinion the other judges concurred.