THE BRIDGEPORT HYDRAULIC COMPANY *vs.* THE
CITY OF BRIDGEPORT.

Third Judicial District, New Haven, June Term, 1925.

BEACH, CURTIS, KEELER, MALTBIE and NICKERSON, Js.

The statutes require a distinct or specific assignment of the errors
complained of by an appellant; therefore, one which merely
states that the court erred in finding the issues for the plaintiff
and in rendering the judgment on file, is too general and cannot
be considered.

An appellant cannot convert what are in reality questions of fact
into questions of law by calling them such in his assignments of
error; nor can such questions be reviewed except upon a motion
to correct the finding.

It is not the duty of a taxpayer, before paying an assessment, to
examine the lists, books, and other records to ascertain whether
the assessment has been legally levied; nor in an action by him
to recover back an illegal tax, can he be charged with neglect
for failing so to do.

If an action to recover money paid under mistake is brought within
a reasonable time after the plaintiff acquires knowledge of the
wrong, the defendant cannot complain that the suit was not
brought earlier, where he has not in the meantime changed
his position to his injury, and no equitable right has intervened
in his favor.

To recover money paid under mistake, it must appear that the
payor acted under a mistake of his rights and duties and that
he was free from any moral or legal obligation to make the pay-
ment, and the payee must in good conscience have no right to
retain it. Where these conditions exist, the money may be
recovered whether it was paid under a mistake of fact or law.

It is the well-established law of this State that one, having paid an
illegal tax, may bring an action to recover it as money unlaw-
fully received and retained; and that in extreme cases the
collection of the tax may be enjoined before payment.

A taxpayer may not only be subjected to an action as for a debt to
collect a tax assessed against him, but his real property may
also be subjected to a lien enforceable at any time without
previous demand for payment, and both his property and his
body are, under § 1295, subject without notice to seizure, under
the tax warrant, which is in the nature of a final execution

Bridgeport Hydraulic Co. *v.* Bridgeport.

upon a judgment; therefore, it cannot fairly be said that one who pays a tax to avoid these onerous penalties does so voluntarily.

If a tax warrant discloses no irregularities upon its face, it cannot be resisted though illegalities lie back of it.

That a municipality has expended unlawfully collected taxes for lawful purposes and that the identity of its taxpaying population has changed since such collection, will not relieve it of its equitable obligation to refund the money wrongfully received.

In the present case, the defendant city was divided into two taxing districts, the first embracing its entire territory, and the second only its thickly settled portions. The property in the first district was taxed only for certain enumerated purposes and the property in the second district was assessed at an additional rate to meet all other municipal expenses. By mistake, certain property of the plaintiff situated in the first district only, was taxed also at the second district rate from 1916 to 1923, and the bills thus prepared were promptly paid by the plaintiff upon presentment. The plaintiff then learned of the error and brought this action to recover its overpayments. *Held* that it was entitled to recover the illegal taxes paid by it for the six years next preceding the date of the action.

Argued June 9th—decided July 30th, 1925.

ACTION to recover money alleged to have been paid as taxes under mutual mistake, brought to the Superior Court in Fairfield County and tried to the court, *Banks, J.;* judgment for plaintiff, and appeal by defendant. *No error.*

*Henry Greenstein,* with whom was *Harry Schwartz,* for the appellant (defendant).

*Arthur M. Marsh,* for the appellee (plaintiff).

NICKERSON, J. The plaintiff is a public service corporation created by the General Assembly and located at Bridgeport. The defendant is a municipal corporation acting under a charter granted by the legislature of Connecticut. In the defendant's charter it is provided that for the purposes of taxation the territory

included within its taxing jurisdiction shall be constituted of two districts to be known as the first district and the second district which are therein defined and limited. 15 Special Laws, 494; 17 Special Laws, 3.

The inhabitants and property within the first district, which comprises the entire territory within the city limits, are liable to taxation for certain enumerated purposes, and all other burdens and expenses of the city are met by taxation levied upon the inhabitants and property within the limits of the second district, which comprises the more thickly settled and central portions of the city. It therefore follows that property listed and assessed in the second district carries rates of taxation applicable to both districts, while property outside of that district carries only the first district rate of taxation. The plaintiff owned property taxable in both districts.

In June, 1906, the plaintiff and defendant entered into a contract by which the defendant city, in consideration of the plaintiff's agreement to supply it with pure water for all public and municipal purposes, agreed to pay the plaintiff certain specified sums of money and also on the first day of June in each succeeding year for twenty years an additional sum of money equal to the tax or taxes assessed against the plaintiff by the defendant and payable on April first preceding on such portion of the plaintiff company's valuation on the assessment books of the defendant city as shall be in excess of $400,000 in the first district, plus a reasonable sum for permanent additions and extensions thereafter made to the plaintiff's plant in that district, and $600,000 in the second district, plus a like reasonable sum for permanent additions and extensions thereafter made to its plant in that district, the latter district to bear the rate levied in both districts.

In each year from 1915 to 1922 inclusive, the plaintiff, within the time and in the manner provided by law, filed with the assessors, or proper officials, lists of all its taxable property in the city of Bridgeport, in each of the taxing districts separately. The board of assessors, tax commissioner, or board of relief in certain years modified the lists so filed and the aggregate valuation of the plaintiff's property for taxation upon such lists as finally determined by the proper authorities was placed in one aggregate assessment for the year in which it was made. There was no separate valuation on the plaintiff's property in each of the taxing districts, but one aggregate assessment was made each year from 1915 to 1922 inclusive. Proceedings for the assessment and collection of taxes by the defendant city during each of the years were prescribed by law. It was the duty of the assessors, or tax commissioner who had the same duties and powers, to prepare and file with the town clerk an abstract of the grand lists as of September first of each year. Such abstract should contain the name of each taxpayer and the amount at which his property was assessed or valued for taxation upon that grand list. It should show the name of each taxpayer, his property, and its valuation for taxation located and taxable in each district separately. That part of the abstract which contains property in the first district and which is located outside of the second district, should be marked "first district only"; and that part which contains property located in the second district should be marked "second district."

Any changes made by the board of relief are entered upon the original abstract of the grand list of each year and the abstract of the first district and the second district then go to the board of apportionment who levy the annual taxes and prescribe separate rates

of taxation, one rate of which is levied on property in the first district and another rate on property in the second district.

The rate book is prepared each year by the city auditor from the abstract and tax levy. It contains the name of each taxpayer, the valuation of his property located and taxable in the first district, and the amount, in dollars, payable by him as taxes at the rate levied with respect to the first district property. The rate book also contains separately the name of each taxpayer, the valuation and assessment of his property located and taxable in the second district, and the amount, in dollars, payable by him as taxes at the rate levied with respect to the second district property. The taxable property in the second district is subject to both of the rates, but the property in the first district is subject to the first district rate only. One part of the rate book contains the assessment of the property in the first district which is located outside of the second district and the taxes payable thereon at the first district rate. Such part of the book is marked "First District only." Another part of the rate book contains the assessment of all property located in the second district and the taxes payable with respect thereto at both the first and second district rates. That part of the book is marked "Second District." The rate book when so completed and filed, or a copy thereof containing such information, is transmitted to the tax collector of the city, together with a proper warrant to him for collection of the taxes as stated therein. The tax collector then prepares and delivers to the taxpayers tax bills showing the amount of taxes demanded from each taxpayer with respect to his property taxable in the first district and second district respectively. The tax collector pays over the taxes collected to the treasurer of the defendant city,

the same being the property of the city. The treasurer disburses the money so received and held by him in accordance with the appropriation thereof and as directed by the proper city officials. All of the taxes collected upon the grand lists of the years 1915 to 1922 inclusive were so paid to the treasurer and were used and expended by the city for its municipal purposes.

The abstract prepared and filed by the city officials with respect to the grand lists of the years 1906 to 1912 inclusive conformed to the regular procedure prescribed by the defendant's charter. The plaintiff's name was entered as a taxpayer of the first district and separately as a taxpayer of the second district. The assessed valuation of its property was also entered separately showing that taxable in each district. Tax bills were rendered accordingly and paid by the plaintiff.

In 1913 changes were made in the defendant's charter and the abstract as prepared and filed by the city officials did not conform to the regular procedure but contained the name of the plaintiff and the assessed value of all its property in a single list or abstract. A tax bill was rendered by the city for the whole amount which was paid by the plaintiff. The changes in the defendant's charter did not authorize the method of taxation pursued. *Chamberlain* v. *Bridgeport,* 88 Conn. 480, 91 Atl. 380.

The amount then overpaid by the plaintiff was afterward refunded by the defendant. In 1914 the abstract was accordingly prepared and filed and a tax bill for the correct amount was rendered and paid by the plaintiff.

The abstracts upon the lists of 1915 to 1922 inclusive as prepared by the city officials did not conform to the prescribed procedure with respect to the plain-

tiff's property situated outside of the second district. Instead, the assessed value of all its taxable property was entered only in the tax list and abstract of the second district. Such error resulted in the rendition by the city collector of tax bills to the plaintiff carrying the rate of taxation levied in the years 1916 to 1923 inclusive upon both districts and applied to all property of the plaintiff's in the city. The tax bills so presented were paid by the plaintiff.

The trial court finds that such errors and mistakes were not chargeable in any degree to the plaintiff, but were committed by and solely chargeable to the assessors or tax commissioner of the defendant city, and were followed by corresponding errors in the office of the city auditor and tax collector of the defendant.

The plaintiff owned property in the first district, and taxable only in that district, assessed for taxation at $400,000. It was taxed at the rate of tax levied on property in the second district. Rate bills for such taxes were completed and the city collector presented to the plaintiff tax bills therefor. When presented the bills were examined by the plaintiff's treasurer, after which vouchers were drawn authorizing payment. The bills showed the aggregate assessment of the plaintiff's property in Bridgeport. The plaintiff's officials checked the amounts to see that they conformed to the value for taxation stated in its tax lists as filed. They did not examine the rate books nor did they make all the mathematical calculations applying the tax rates to the assessments. They believed, in reliance upon the defendant and its officials and the course of business in the past, that the duties of the city officials had been performed as prescribed by law and that the amounts demanded by the bills as due and payable had been correctly calculated according to law and the contract between the plaintiff and the defendant, and

that the amounts stated by said bills to be due were in fact lawfully due to the defendant. The plaintiff thereupon paid such bills believing that if they were not paid it would incur the liens, penalties and other remedies prescribed by law for the enforcement and collection of taxes. In so doing it overpaid the defendant a considerable sum. In relying upon the correctness of the bills presented, the plaintiff acted reasonably. It in no way contributed to the errors and mistakes made by the defendant. It did no act which led the defendant to change its position to its disadvantage. It did not know of the errors of the defendant until February, 1924. It then acted with due promptness by filing a petition and demand for a refund by the defendant and subsequently brought this action. The amounts which the plaintiff overpaid were not legally due to the defendant and were not based upon or in return for any consideration or in discharge of any legal or moral obligation.

From the judgment for the plaintiff to recover the amounts overpaid as taxes during the six years next preceding the commencement of the action, the defendant appealed. The first reason assigned is that "the court erred in finding the issues for the plaintiff and rendering the judgment on file." The second is similar. Neither meet the requirements of the statute. They are too general and cannot be considered. *Hine* v. *McNerney,* 97 Conn. 308, 116 Atl. 610; *Fagerholm* v. *Nielson,* 93 Conn. 380, 387, 106 Atl. 333; *Avery* v. *Ginsburg,* 92 Conn. 208, 102 Atl. 589.

The third, sixth, ninth, twentieth, twenty-first and twenty-fourth reasons of appeal relate to questions of fact which were found by the court against the contention of the defendant. Whether the court erred in deciding that the plaintiff's property valued at $400,-000 located in the first district was by the mistake of

the defendant's officials carried into the column of property taxable in the second district, or that the defendant had not changed its position, or suffered injury by reason of the plaintiff's failure to discover the errors of its tax officials, are in reality questions of fact. Calling them questions of law does not change them. *Belisle* v. *Berkshire Ice Co.*, 98 Conn. 689, 690, 701, 120 Atl. 599. Claims of this nature can only be considered upon a motion to correct the finding. *Pavlovchik* v. *Lupariello*, 101 Conn. 567, 569, 127 Atl. 18.

The seventh, eighth, thirteenth, fifteenth, sixteenth, nineteenth, twenty-first and twenty-sixth reasons of appeal assign error in holding that no duty rested upon the plaintiff to inspect the tax lists, abstracts, rate books and tax bills before paying the tax; that the plaintiff, having the means of ascertaining the true state of facts by the exercise of due diligence and failing to exercise the same and make inquiry, was negligent and that it was guilty of laches. The defendant claims that it was the plaintiff's duty to go to its city offices and examine the lists and books kept by its officials and ascertain if they had performed the duty imposed upon them by law. It is not claimed that the plaintiff or its officers committed any error. No rule or duty is imposed upon a taxpayer to examine the books, or conduct of the officials, of a municipality and ascertain if they have complied with the requirements of the law before paying a tax presented for payment by the tax collector. It would be a great hardship to taxpayers and annoyance to tax officials if each taxpayer was required to go personally and examine the grand lists and various steps taken. *Goddard* v. *Seymour*, 30 Conn. 394, 400.

The defendant also claims that the plaintiff was negligent and guilty of laches in not ascertaining the

facts and bringing suit before. The plaintiff brought the suit within a reasonable time after it had knowledge of the wrong. Its failure to bring suit before in no way injured the defendant. The defendant did not change its position and no equitable right has intervened on its part. It cannot now claim laches to enable it to hold the money it has no right to. *Gilpatric* v. *Hartford,* 98 Conn. 471, 481, 120 Atl. 317; *Mansfield* v. *Lynch,* 59 Conn. 320, 22 Atl. 313; *New York, N. H. & H. R. Co.* v. *Ansonia Electrical Co.,* 83 Conn. 462, 76 Atl. 1004.

The fourth, fifth, fourteenth and twenty-fifth reasons of appeal may be considered together. It is claimed that the court erred in deciding that the plaintiff was free from any moral or legal obligation to make the payments and that the defendant in good conscience had no legal right to retain them; that the facts brought the case within the rule governing the recovery of money paid under a mistake; and in failing to hold and decide that the payments made were voluntary with full, or adequate means of, knowledge of the facts.

The case of *Sheldon* v. *South School District,* 24 Conn. 88, is cited by the defendant. In that case the plaintiff's land had been levied upon and attempted to be sold. The title did not pass and the money received from the sale did not belong to the one who was still owner of the estate. There was no mistake on the part of the plaintiff. He paid the money to perfect the sale rather than to prevent it. That case has been questioned, and the doctrine that the payment of money for taxes to prevent the taking of property therefor is necessarily a voluntary payment, doubted. "It is worthy of serious consideration whether that case, in view of our recent decisions, to

that extent ought not to be overruled." *Seeley* v. *Westport,* 47 Conn. 294, 299.

The case of *Russell* v. *New Haven,* 51 Conn. 259, is cited by the defendant with the claim that it is identical with this case. The fundamental question in that case was whether the property was rightfully assessed. It was there claimed that the property, on account of its peculiar situation, was not taxable, or if taxable, that it was personal property and not real estate, and therefore not subject to tax liens, the validity of which was involved. The nature of the rent reserved in the lease was also involved as affecting the question of whether the building was taxable. The owner of the property failed to make and return a list under oath as required by law, and the assessors added ten per cent—which was claimed to be illegal—because the owner was a nonresident. Whether there had been a submission to the jurisdiction of the assessors to justify them in treating the owner as a resident was not decided, the court inclining to the opinion that if the owner was regularly doing business in this State as a successor of a former owner, that perhaps would be the better view. There was no claim that the tax had been paid under any mistake. It was clear that the tax, except the ten per cent addition, was justly due. As to the ten per cent, with no claim made by the plaintiff that it had been paid through a mistake, the court was inclined to think that the payment was a voluntary one. The facts in that case are entirely different from this case. There was no mistake, error or inadvertence about the bill. The assessors had added ten per cent under the provisions of the statute, claiming the right to do so. The court was inclined to consider they were right in so doing. The excess of ten per cent was added under a claim of right which the court did not hold was

error. The case nowhere holds that payments made through error, inadvertence or mistake could not be recovered.

In *Morris* v. *New Haven,* 78 Conn. 673, 63 Atl. 123, the tax was paid pending an appeal from action of the board of relief to erase an addition of ten per cent added by the assessors. The collector had no warrant to collect the tax, all proceedings being suspended by the appeal. The point there decided was that such payment determined the action and it was dismissed. In *Goddard* v. *Seymour,* 30 Conn. 394, it was found and held that the defendant was justly entitled to retain the money and that the plaintiff was not in equity and good conscience entitled to it.

The law governing the collection of taxes is prescribed in the charter of the defendant city and the General Statutes. The collection of a tax is not an element of the assessment. It is subsequent thereto and assumes a valid tax. The charging of the party in the assessment with subjects of taxation which are either exempt by law or for other reasons not assessable to him; the taxing him in a district in which he is not taxable and the failure to obey the law in the proceedings to the injury of the party's rights, are wrongs for which the taxpayer has a remedy. 2 Cooley on Taxation (3d Ed.) 1377, 1378.

Where the tax warrant on its face discloses no illegality, it is well settled that resistance is not permitted, notwithstanding illegalities lie back of it. 2 Cooley on Taxation (3d Ed.) 1476.

It is the duty of every tax collector to collect the taxes in the rate or tax bill annexed to the warrant. General Statutes, §§ 1291, 1295. The tax warrant is in the nature of a final execution, such as is now issued where the body is liable. *State* v. *Hall,* 86 Conn. 191, 196, 84 Atl. 923; General Statutes, § 1295. It com-

mands the tax collector to forthwith collect of each person the tax laid against him. General Statutes, § 1317.

The defendant in its brief argues that towns and cities are authorized to collect unpaid taxes only by bringing suit as for debt and that the defendant would have no remedy to collect the tax except by a suit at law. Section 1313 of the General Statutes is cited in support of such claim. That statute expressly provides that the remedy therein created is "in addition to the other remedies provided by law." The tax collector may levy upon the goods, or for want of such goods upon the real estate or body of such tax debtor, and commit him to jail until he pays the tax and legal costs. General Statutes, § 1295.

The interest of every taxpayer in any real estate is also subject to a lien for that part of his tax laid upon the valuation of his interest. Such lien exists from October 1st in the year prior to that in which the tax is laid and until one year after the tax becomes due and it may be continued. It may be enforced at any time. General Statutes, § 1300. It is independent of any demand for, or attempt to collect, the tax. *Hart* v. *Tiernan,* 59 Conn. 521, 21 Atl. 1007. It may be continued by the tax collector causing to be recorded in the land records a certificate describing the real estate, the amount of the tax and when it became due. It then bears interest at seven per cent and continues a lien for fifteen years. General Statutes, § 1308.

The action for money had and received is an equitable action to recover back money paid by mistake where the payor is free from any moral or legal obligation to make the payment and the payee in good conscience has no right to retain it. Is the plaintiff in this action, as between it and the defendant, in equity

and good conscience entitled to the money? If it is, then it is entitled to recover. The real ground of recovery is the equitable right of the plaintiff to the money. The court finds the plaintiff paid the money under a mistake of its rights and duties. It is admitted by the defendant that the plaintiff was under no moral or legal obligation to pay the money and that the defendant has no right in good conscience to retain it. The law of this State is well settled that under such circumstances the plaintiff is entitled to recover back the money so paid. *Northrop* v. *Graves,* 19 Conn. 548; 1 Swift's Digest, 398; *Goddard* v. *Seymour,* 30 Conn. 394, 395.

The defendant claims and asks the court to perpetrate an injustice upon the plaintiff. Nothing is advanced which justifies the defendant in retaining the money paid by the plaintiff upon the facts presented. No claim is made that the defendant, in equity and good conscience, has any right, or is entitled, to retain it; no claim that the tax is legal or just. It clearly appears that it is both illegal and unjust. There is no good reason why a person denying the legality of a tax should not have the right to a clear remedy by suit to recover it back, after it has been paid upon presentation of the tax bill by the collector. It has long been the law of this State that "where a person pays taxes that are illegally imposed upon him whether paid by compulsory process or not, he may recover back the money." 1 Swift's Digest, 405.

This court has repeatedly held that the tax may be paid and an action brought to recover it as money illegally received and retained, and that in extreme cases an injunction may be granted restraining the collection of the tax. *Atwater* v. *Woodbridge,* 6 Conn. 223; *Adam* v. *Litchfield,* 10 Conn. 127; *Bailey* v. *Goshen,* 32 Conn. 546, 548; *Hubbard* v. *Brainard,* 35

Conn. 563; *Seeley* v. *Westport,* 47 Conn. 294; *Phelps* v. *Thurston,* 47 Conn. 477, 486; *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 391, 126 Atl. 1.

In *Underwood Typewriter Co.* v. *Chamberlain,* 92 Conn. 199, 204, 102 Atl. 600, WHEELER, J., says: "This is common practice and it is sound public policy. It is not to the advantage of the State that those whom it seeks to tax should refuse to pay their taxes in order to test their validity. Such a course, if largely followed, might cause the State more than an inconvenience in the disturbance of the budget upon which the payment of its governmental obligations depended. The more orderly course is a compliance with the law by a payment, reserving the right to contest the validity of the required payment. The payment of the tax in question was not a voluntary one, it was in the contemplation of the law a payment under duress of the penalties of the Act. And this we hold from a consideration of the provisions of the Act, and without a consideration of any remedies by way of distress which the State might have for the enforcement of payment of this tax. A payment of a tax made to avoid the onerous penalties of the Act imposing the tax for its nonpayment, is not a voluntary payment. The more modern doctrine supports this view. *Robertson* v. *Frank Brothers Co.,* 132 U. S. 17, 10 Sup. Ct. 5; *Atchison, T. & S. F. Ry. Co.* v. *O'Connor,* 223 U. S. 280, 285, 32 Sup. Ct. 216."

The case of *Gilpatric* v. *Hartford,* 98 Conn. 471, 120 Atl. 317, is decisive of this case. That was an action brought to recover money paid as taxes. On page 480, BEACH, J., says: "Our rule as to recovery of money paid under a mistake has long been well-settled. The payor must act under a mistake of his rights and duties, and be free from any moral or legal obligation to make the payment; and the payee must in good conscience

have no right to retain it. When these conditions exist the money may be recovered whether it was paid under mistake of fact or of law. *Northrop* v. *Graves,* 19 Conn. 548."

The remaining reasons of appeal relate to claims that the defendant, having received the money, mingled it with its general funds, expended it for municipal purposes and, not having in its possession the identical funds, the taxpayers, who were not such when the plaintiff paid the money, cannot be now called upon, or taxed, to pay it back, and therefore the court erred in rendering judgment for the plaintiff. The defendant says that because it has not the identical money it received from the plaintiff, it should not be required to return it. It claims as a principle of law that because it has spent the money, received no matter how wrongfully or unconscionably from the plaintiff, it cannot now be recovered back. The mere statement of such a proposition seems to be a sufficient refutation of it. Where a party receives money from another which in equity and good conscience it ought not to keep, it cannot by spending it escape the liability to repay it. The law reaches further than to the identical coins and bills which are received. The defendant city is not the agent of the taxpayers. It is the inhabitants including the taxpayers acting under a charter as a municipal corporation with perpetual existence. As such corporation it has acted, levied the tax and received the money. It has no shadow of right in good conscience to retain the money so paid. The plaintiff brought the action as soon as it discovered the error. Neither the mistake of the plaintiff in paying, or the good faith of the defendant in receiving, nor the fact that the money has been spent, gives the defendant any equitable right to retain the money. *Gilpatric* v. *Hartford,* 98 Conn. 471, 481, 120 Atl. 317. The judg-

ment appealed from embodies wholesome and simple justice.

There is no error.

In this opinion the other judges concurred.