[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1664
The plaintiff has filed an action against the defendant, Town of Ledyard WPCA, claiming that the WPCA has been overcharging it for water and sewer use. The parties have agreed that if this is the case the amount of the of the overcharge would be $37,932.50. The reason for the dispute is that the plaintiff claims that the defendant was charging it a commercial rate for water and sewer use as opposed to the apartment/condominium (residential rate) which should have been used for the 72 unit apartment complex.
 Facts
The plaintiff purchased the property, an apartment complex in August, 1998 and paid water and sewer bills through December, 1999.
In August, 1999, the plaintiff discovered that the bills for the apartment were higher than that charged for other apartment complexes that it managed throughout the state. A review of the rate being charged showed that the plaintiff was being charged the commercial rate rather than the residential rate, which it claims is appropriate for an apartment complex. The bills the plaintiff received from the defendant did not indicate the rate structure being applied to their bills.
In December, 1999, the plaintiff petitioned the defendant to correct the rate charged from commercial to residential. By vote of its commission, in April of 2000, the defendant determined that the appropriate rate was a residential rate and changed it to residential as requested, retroactive to December, 1999 to correct the error. The defendant contends that a refund of voluntary payments is not available where the plaintiff knew or should have known of a mistake or error that caused an overpayment. It claims that the plaintiff had sufficient information to realize that it was being billed under the wrong classification. It further claimed that under these circumstances the plaintiff cannot recover. The parties have agreed that the difference between the commercial rate and the apartment rate for the fifteen month period involved amounts to $37,932.56.
However, the defendant claims that the charging of the commercial rate was not a mistake. It justifies its position by claiming that the plaintiff functions as a commercial entity rather than a typical multi-family apartment building. The plaintiff is in business to make a profit. Secondly, the defendant argues that the complex was built in 1996. At that time a private water company provided the water at an agreed upon rate. It did not set its rates through a public hearing process. When the defendant acquired the water company's business in CT Page 1665 1986, it kept the previous rate structure in place which was classified as a commercial account under the rate structure. That designation remained in effect for the next fourteen years. Prior owners of the complex did not complain about the rate structure. Finally, the defendant contends that it was justified in using the account as a commercial one because the tax assessor classified the property as commercial for tax purposes.
In June or July of 1999, a Mr. Thompson, a representative of the plaintiff, testified that he concluded that the bills were too high as of that date. He called the defendant to obtain a copy of the rate sheet. After receiving it he realized that the commercial rate rather than the apartment rate was being applied. He nevertheless continued to pay the bills as issued until December, 1999, at which time the plaintiff told the town it took issue with the rate being charged.
 Discussion
The parties cite many of the same cases each claiming they support its position. In the case of Bridgeport Hydraulic Co. v. Bridgeport,103 Conn. 249 (1925); Pitt v. Stamford, 117 Conn. 338 (1933) andBridgeport Screw Co. v. City of Bridgeport, 125 Conn. 593 (1939), the Supreme Court set out a narrow set of circumstances under which a tax payer can obtain a refund of voluntarily paid taxes or fees.
In the Bridgeport Screw Co. case, the court determined that the plaintiff was not entitled to recover taxes overpaid over a seven year period. The court found that the failure to discover the error over the seven year period barred recovery by the plaintiff from the city. The basis for the decision was that the plaintiff should have discovered the error sooner and done something about it. In this case, however, we have a situation where the plaintiff discovered the problem about one year after obtaining the property and thereafter took steps to correct the situation. At least in the judgment of the plaintiff, when-it discovered the error, it promptly went about the business of remedying it thus distinguishing the instant case from the Bridgeport Screw Co. case, supra.
In the case of Bridgeport Hydraulic Co. v. Bridgeport, 103 Conn. 249
(1925), the plaintiff sought and received recovery of overpayment taxes on certain property which was in the wrong municipal taxing district. The court found that the mistake concerning the classification of the property was solely the responsibility of the city and was not attributable to the plaintiff nor did the plaintiff contribute to the error. The case stands for the proposition that where the tax payer or fee payer has no involvement in the mistake and has innocently overpaid CT Page 1666 taxes or assessments they are entitled to get their money back because withholding that would be improper and the payer is free from any moral or legal obligation. In other words, so long as the payer does not bear any responsibility for the overpayment it should be entitled to the refund of the monies taken unjustly. In the case of Pitt v. Stamford,117 Conn. 388 (1933), the standard provided is that there is a right of recovery, whether it is a mistake of fact or lack of knowledge, where the mistake is made by the taxing authority without any contribution or neglect of legal duty by the payer. In this case, there is no claim that the plaintiff played any part in the overpayment of the sewer and water use, only that the plaintiff should have discovered the error sooner than it did and reported that fact to the defendant.
The court finds that all of the cases set forth the law that where a municipality makes a mistake the taxpayer must demonstrate that the mistake was not contributed to by him or attributable to his neglect of some legal duty. Defendant claims there was not a mistake to classify the plaintiff as a commercial entity. The defendant did, however, agree to change the classification in April, 2000. It claims that this is not an admission of guilt. The court disagrees and finds that it is in effect an admission of guilt, but more importantly, the court finds that the commercial rate was clearly erroneous based upon the facts. The apartment complex was a residential one not a commercial one under any circumstances.
Finally, the defendant claims that the plaintiff knew what the rate was in September, 1998 when it purchased the property because it received a rate sheet on that date. The plaintiff claims that although it does not deny it received the rate sheet, it did not realize until April of 1999 that the incorrect rate was being applied. The defendant argues if had the plaintiff put the defendant on notice at that time the amount in dispute would only be $19,812.83. After having actual knowledge on April of 1999, the plaintiff continued to pay until December of 1999 when it notified the defendant that it disagreed with the rate.
Defendant claims that under the cases cited, the plaintiff cannot recover for over payments where the plaintiff payed without protest after becoming aware it was being overcharged. In this case, the plaintiff claims it did not become aware of the erroneous rate being charged until April, 1999. There is no valid claim that the plaintiff in any way caused the defendant to overcharge it. The only legitimate claim of the defendant is that when the plaintiff discovered the problem it did not act more quickly to rectify it. Under all of the circumstances, the court finds that the commercial rate was incorrect. The plaintiff did not contribute to the overpayment nor did it delay unreasonably in demanding a refund. CT Page 1667
Accordingly, the court enters judgment for the plaintiff in the amount of $37,932.56, plus statutory interest from December, 1999 in the amount of $3,034.60. The total judgment, therefore, is $40,967.16.
D. Michael Hurley, Judge Trial Referee