G. HAROLD GILPATRIC, TREASURER, ET AL. vs. THE
CITY OF HARTFORD ET ALS.

First Judicial District, Hartford, January Term,.1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

General Statutes, §§ 1201, 1205, requires insurance corporations,
among others, to report to the Tax Commissioner, and to pay
the State treasurer a tax based on the fair market value of each
share of their capital stock, and requires the treasurer to remit to the
cities or towns the amount received upon shares of persons residing,
or corporations located, in such cities or towns, or if the shares were
"owned by the estate of a deceased person, whether held in trust
or otherwise," to the town or city where the decedent resided at
the time of his death. *Held* that under the amendment of 1915,
insurance stock in the hands of a testamentary trustee must be
construed as still "owned by the estate" of the decedent, and
therefore that the tax upon such stock was payable by the State
treasurer, not to the town of the trustee's residence or location,
but to the town where the decedent resided at the time of his
death.

To recover money paid under a mistake, in this State, it must appear
that the payor has acted under a mistake of his rights and duties
and that he was free from any moral or legal obligation to make
the payment, and the payee must in good conscience have no
right to retain it. Where these conditions exist, the money may
be recovered whether it was paid under a mistake of fact or of
law.

In the present case it appeared that the stock of certain insurance
companies subject to the tax was owned by a resident of Suffield
at his death, and that a Hartford trust company acted as executor
of his will, and upon settling its final account in 1918, thereafter
held the stock as testamentary trustee. The insurance companies
duly paid the tax upon such stock for the years 1919, 1920, and
1921, to the State treasurer, who remitted the amounts received
to the City of Hartford. *Held:*—

1. That such receipts belonged to the town of Suffield and might be
recovered in an action against the City of Hartford.

2. That it was no defense that the mistake in making the payments
was made by the State treasurer, that the city received them in
good faith, that it had spent the money (a fact appearing only
through a "speaking" demurrer), and that there was a delay of
two years and a half after the 1919 payment before suit was in-
stituted.

3. That inasmuch as the insurance companies, by reporting and paying the tax to the State, had duly fulfilled their obligations under the statute, their demurrers to the complaint were properly sustained.

Argued January 4th—decided March 1st, 1923.

SUIT to secure the return to the plaintiff town of Suffield of tax moneys alleged to belong to it and to have been turned over by the treasurer of the State, through mistake, to the City of Hartford, brought to and tried by the Superior Court in Hartford County, *Kellogg, J.,* upon demurrers of the respective defendants to the complaint; the court sustained the demurrers and afterward rendered judgment for the defendants, from which the plaintiffs appealed. *Error in part and cause remanded for further proceedings according to law, with direction to set aside the judgment, to sustain the demurrers of the Ætna Life Insurance Company, the Ætna Casualty and Surety Company, and the Travelers Insurance Company, and to overrule the demurrers of the City of Hartford and of the Hartford-Connecticut Trust Company.*

The complaint alleges, in substance, that one Leavitt P. Bissell was, at the time of his death, a resident of the town of Suffield; that by his will he left certain shares of the capital stock of the defendant the Ætna Life Insurance Company, the Ætna Casualty and Surety Company, and the Travelers Insurance Company, to the defendant the Hartford-Connecticut Trust Company, a corporation located in the City of Hartford, in trust for the accomplishment of certain trusts which are not now and will not be terminated for some years; that the trust company was also the executor under the will of Mr. Bissell, and in 1918 filed its final account as such executor and took possession of the stock certificates in question as testamentary trustee; that thereafter in each of the years 1919, 1920 and 1921, the several

defendant insurance companies, acting on information furnished by the defendant trust company, reported to the tax commissioner of the State of Connecticut that the Hartford-Connecticut Trust Company was the owner of such shares of stock for the purpose of taxation under §§ 1201 and 1205 of the General Statutes; that the several defendant insurance companies paid the taxes on such shares for the years 1919, 1920 and 1921, to the State treasurer as required by § 1201; that the State treasurer thereupon remitted the same to the City of Hartford, which is enjoying and has enjoyed the use and benefit of these taxes and moneys, to which it in good conscience is not entitled, and has refused to return the same on demand, and that such taxes and moneys were paid to the City of Hartford under a mistake and that the town of Suffield was and is justly entitled to the same. The plaintiffs claim an order directing the several insurance companies and the trust company to desist from reporting to the tax commissioner that the residence of the owner of these shares is the City of Hartford, and a judgment against the City of Hartford for the amount of the taxes so received with interest.

To this complaint each of the three insurance companies demurred, on the ground that it appeared from the complaint and from § 1201, that it had carried out all the provisions of the statute and had made due return to the tax commissioner in accordance therewith.

The Hartford-Connecticut Trust Company demurred, on the ground that it appeared from the complaint and from § 1205, that the taxes in question were rightfully due and owing to the City of Hartford, because it appeared therefrom that the trust company was the owner of the shares of stock described in the complaint.

The City of Hartford demurred to the complaint,

first, on the ground stated in the demurrer of the trust company; second, that the City of Hartford having used. and expended the money so paid to it under a mistake of law, or through the negligence of the plaintiffs or others, cannot now be compelled to return the same; third, because the plaintiffs were guilty of laches in asserting their rights; and fourth, upon a ground not pursued on the brief.

The Superior Court sustained the demurrers of the three insurance companies and of the Hartford-Connecticut Trust Company, and sustained the demurrer of the City of Hartford upon the first ground stated therein.

*Hugh M. Alcorn* and *Reinhart L. Gideon,* with whom, on the brief, was *James E. Cannon,* for the appellants (plaintiffs).

*Philip Roberts,* with whom, on the brief, was *Robert P. Butler,* for the appellee (defendant City of Hartford).

*Harry W. Reynolds,* for the appellees (defendants Ætna Life Insurance Company *et al.*).

*Robert C. Dickenson,* with whom, on the brief, were *William BroSmith* and *Allen E. BroSmith,* for the appellee (defendant Travelers Insurance Company).

*Clark P. Durant,* for the appellee (defendant Hartford-Connecticut Trust Company).

BEACH, J.   The case involves a construction of §§ 1201 and 1205 of the General Statutes, the material portions of which are printed in a footnote.   The italicised part of § 1205 was added to the statute by amendment in 1915.

"Sec. 1201. CERTAIN CORPORATIONS TO REPORT AND PAY TAX TO THE STATE.   The secretary, treasurer or cashier of every bank or national

Section 1201 requires the proper officer of every insurance company to report annually to the tax commissioner "the name and residence of each stockholder," the number of shares "owned" by each on October 1st, and to pay to the State treasurer a tax of one per centum on the fair market value of each share. When that is done the insurance company has fully complied with the statute. It is not charged with the duty of seeing that the State treasurer complies with

banking association, and trust, insurance, investment and bridge company, whose stock is not exempt from taxation, shall, annually, on or before October fifteenth, file in the office of the tax commissioner a statement under oath, showing the number of shares of its capital stock and the fair market value thereof on the first day of October, the name and residence of each stockholder and the number of shares owned by each on said last named date; and, on or before the last day of the following February, each of the corporations aforesaid shall pay to the treasurer of this state a tax of one per centum on the fair market value of each share of its stock, . . .

"Sec. 1205. STATE REMITS TAXES TO CITIES OR TOWNS. CITIES OR TOWNS TO REMIT TO TAXING DISTRICTS. NONRESIDENT STOCK. On or before the fifteenth day of April in each year, the treasurer of the state shall remit to the treasurer of each town in the state, or, in towns where the town and city governments are consolidated, to the city treasurer, the amount of the tax received as aforesaid upon such shares of the capital stock of any of the aforesaid corporations as were, on the first day of October of the preceding year, owned by persons who resided or corporations which were located in such town . . . *or if owned by the estate of a deceased person, whether held in trust or otherwise, then to the treasurer of the town or city wherein the decedent resided at the time of his death.* Each of the aforesaid town and city treasurers shall, on or before the first day of May in each year, distribute the tax derived from the shares which were owned by each stockholder resident or located therein on the first day of the preceding October, among the taxing districts, including therein the town in which said stockholder then resided or was located, in the proportion that the tax rate fixed by each of such districts within the twelve months next preceding said first of May bears to the combined or total tax rate of all said taxing districts; to the end that such town and the taxing districts therein may, together, receive the same amount of tax that they would have received had said shares been listed in the name of the stockholders resident or located therein, and assessed and taxed at the valuation fixed by the board of equalization, and at an aggregate rate equal to the rate prescribed in section 1201. . . ."

§ 1205. An insurance company reasonably performs its stated obligation to report to the tax commissioner, when it reports the name and residence of each stockholder as shown by its stock records. For all its corporate purposes the shareholder of record is the owner of the stock standing in his name, and if any shareholder appears of record to be other than the absolute owner, the company does all that the statute can reasonably be held to require when it reports the fact of ownership as its record shows that fact to be. There is no allegation in the complaint that the respective insurance companies have not reported all the facts as to ownership shown by their records, and the demurrers of the Ætna Life Insurance Company, the Ætna Casualty and Surety Company, and the Travelers Insurance Company were properly sustained.

The demurrer of the Hartford-Connecticut Trust Company and the first ground of the demurrer of the City of Hartford, raise the question of the construction of § 1205. That section requires the State treasurer to remit to each town or city treasurer, on or before April 15th in each year, the amount of the tax received from such shares of each insurance company as were owned, on October 15th of the preceding year, by persons who resided or corporations which were located in such town or city, "or if owned by the estate of a deceased person, whether held in trust or otherwise, then to the treasurer of the town or city wherein the decedent resided at the time of his death." The question is whether, for the purposes of this statute, the shares of stock in question were "owned by" the Hartford-Connecticut Trust Company, a corporation located in the City of Hartford, or by the estate of Mr. Bissell, who resided in the town of Suffield at the date of his death.

It is apparent that the phrase "owned by the estate

of a deceased person" is not very well expressed. In its comprehensive significance the estate of a deceased person is the sum total of the property formerly owned by him which after his death remains subject to administration and to distribution under his will or according to law in the Court of Probate. The estate of a deceased person cannot with any accuracy be said to "own" anything; but in common speech it is often personified as the owner of the several items of property making up the aggregate estate, and in this sense the words "owned by" the estate of a deceased person are synonymous with the words "belonging to" or "forming part of" the estate of a deceased person. This is the only sensible meaning which can be attributed to these words in § 1205, and all the parties litigant have tacitly adopted this interpretation of them. Thus the City of Hartford in its brief says: "The City of Hartford admits that from September 24, 1913,—the date of death of Leavitt P. Bissell in Suffield —until August 22, 1918,—the date when Leavitt P. Bissell's estate was settled by the filing of the final account in the Probate Court by the Hartford-Connecticut Trust Company as executor—that the shares of stock of the insurance companies mentioned in the complaint were shares 'owned by the estate of a deceased person' within the meaning of § 1205." But the claim is that after that date, when the legal title passed to the Hartford-Connecticut Trust Company as testamentary trustee, they were no longer owned by the estate but by the trustee; that upon the settlement of Mr. Bissell's estate by the acceptance of the final report of the executor, and the distribution of the estate to the various beneficiaries under his will, including the testamentary trustee, his estate ceased to exist as an entity; and that it is of no consequence that prior to the distribution of these shares they were held by

the Hartford-Connecticut Trust Company as executor, because they were so held by it in its capacity as the personal representative of the deceased, but afterward in its capacity as trustee under the will and as one of the distributees of the estate.

The logical force of this argument depends wholly on the assumption that the delivery of these shares by the executor to the testamentary trustee, accompanied by the transfer of title, took them out of the estate as if they had been delivered and transferred to a beneficiary legatee. If it did not, then the fact that the trustee took the legal title is of little importance, for it is admitted that the town of Suffield was entitled to the tax while the legal title was held by the executor, and the statute wipes out any technical distinction between the title of an executor and the title of a trustee, by the words "whether held in trust or otherwise." Unless, therefore, the transfer of title from the executor to the trustee takes these shares out of the estate so that they can no longer be said to belong to or form part of it, we cannot ignore the words last quoted and by a process of construction substitute for them "while held by the executor or administrator of the deceased."

The acceptance of the executor's final account and the transfer of title to the testamentary trustee discharged the trust company from further liability as executor; but it was not a final distribution or division among beneficiaries. Such a distribution or division of these shares cannot take place until the final account of the testamentary trustee has been accepted. Thus in *Morse* v. *Ward*, 92 Conn. 286, 102 Atl. 586, we said, in speaking of the final account of the testamentary trustee in that case: "The account which precedes distribution is in our practice called a final account, and it was in such sense the statute of 1911 [now § 5045

dealing with accounts of testamentary trustees] uses the term final account, and in such sense the Court of Probate used this term in its order. And it precedes and is the basis for the order of distribution." In that case an order of distribution was made necessary by the terms of the trust. In this case that formality may or may not be necessary, but it is certain that until the final account of the testamentary trustee is accepted, these shares will continue to be undistributed or undivided estate of the testator, so far as any beneficial ownership is concerned.

In the meantime the legal title to this part of Mr. Bissell's estate has passed from one temporary custodian of title to another. Neither the executor nor the trustee can have any property right of his own in the estate in his hands, though each is entitled to have the expense of administering his trust paid out of it. Each is under a legal duty founded in the personal confidence of the testator, and enforcible by the Court of Probate, to deal with the estate in his hands according to the testator's wishes declared by his will; until his obligation is terminated by the acceptance of his final account and the transfer of the legal title to another person. Although the duties of these successive custodians of the legal title differ in detail, and though they are called by different names, the statute forbids any distinction to be taken upon that ground alone, and we think the evident intention of the amendment of 1915 was that the tax on shares of insurance stock belonging to the estate of a deceased person should be remitted to the treasurer of the town wherein the decedent resided at the time of his death, until such shares, whether held in trust or otherwise, should pass out of his estate and into the hands of his beneficiaries.

The City of Hartford attempts to account for the amendment of 1915 by limiting the words "held in

trust," to the comparatively infrequent cases where the decedent was himself a trustee at the time of his death, and the trusteeship devolved on his executor or administrator. This seems an inadequate explanation of the amendment. The personal representative is in such cases only *ad interim* trustee and generally for a brief interval; property held in trust by the decedent at the time of his death is not an asset of his estate, and does not in any real sense belong to or form part of it, and so this construction deprives the amendment of any considerable and substantial effect.

It is more reasonable to suppose that the General Assembly took note of the increasing tendency of wealthy testators to appoint trust companies as their testamentary trustees, and intended by the amendment of 1915 to prevent the consequent diversion of these taxes to the larger cities while such shares were held in trust as undistributed estate of the decedent.

The other grounds of demurrer require little comment. Our rule as to recovery of money paid under a mistake has long been well-settled. The payor must act under a mistake of his rights and duties, and be free from any moral or legal obligation to make the payment; and the payee must in good conscience have no right to retain it. When these conditions exist the money may be recovered whether it was paid under mistake of fact or of law. *Northrop* v. *Graves*, 19 Conn. 548. The case made by the complaint satisfies these conditions. The State treasurer was not only under no obligation to pay these taxes to the City of Hartford, but was under an obligation not to do so, though by mistake he misconceived his statutory duty. In this respect the case at bar is closely paralleled by *Northrop* v. *Graves, supra*, where an executor who mistakenly paid a legacy to the wrong person was allowed to recover it.

Gilpatric *v.* Hartford.

It seems equally clear that the City of Hartford has no shadow of right in good conscience to retain these taxes. Neither the mistake of the State treasurer in paying, nor its own good faith in receiving them, nor the fact (in respect of which the demurrer "speaks") that the money has been spent, gives it any equitable right to retain moneys which, as this ground of demurrer admits, belong to the town of Suffield. If it were necessary to do so it might also be important to comment on the fact that the State treasurer was not dealing with his own funds but with public moneys of the State, in which it would appear to be especially difficult for any municipality to acquire equitable rights inconsistent with the statute governing their distribution. See, in this connection, *Northrop* v. *Graves, supra,* at page 560, where the question is suggested whether payments made by mistake of an executor out of funds of the estate stand on the same footing as if he were dealing with his own funds.

The only other ground of demurrer pursued in the brief of the City of Hartford is that of laches in waiting two years and a half after the payment of April 15th, 1919, before instituting this suit. It seems clear that in the absence of any intervening equitable right on the part of the City of Hartford, this delay is not in law fatal to the plaintiffs' recovery.

There is error in part, and the cause is remanded for further proceedings according to law, with directions to set aside the judgment, to sustain the demurrers of the Ætna Life Insurance Company, the Ætna Casualty and Surety Company and the Travelers Insurance Company, and to overrule the demurrers of the Hartford-Connecticut Trust Company and of the City of Hartford.

In this opinion the other judges concurred.