## FROST v. FOWLERTON CONSOLIDATED SCHOOL DIST. NO. 1 et al.

### No. 3181.

Court of Civil Appeals of Texas.
Beaumont.

Nov. 29, 1937.

Rehearing Denied Dec. 15, 1937.

Lawler, Wood & Childress, of Houston, and Johnson & Long, of Carrizo Springs, for appellant.

George R. Thomson and Robert G. Harris, both of San Antonio, for appellees.

WALKER, Chief Justice.

On the 23d day of July, 1936, Edith Buckley delivered to A. H. Rife, receiver of T. S. Masterson, the following instru-

ment, duly executed by her, and in connection therewith the warrant therein described:

"O. T. Howard, vs. T. S. Masterson.

"In the District Court, Bexar County, Texas 45th Judicial District of Texas. No. B–70958.

"Whereas, the Fowlerton Consolidated School District No. 1, of La Salle and Mc-Mullen Counties, Texas, by H. S. Hollan, its president, and W. B. Stanfield, John R. Holub, Anton J. Barta, and Raimund Bartos, trustees, executed its certain voucher, or order, dated Aug. 12, 1931, directing the Stockmen's National Bank, of Cotulla, Texas, Depository for La Salle County School Funds, to pay out of the Maintenance Fund, to T. S. Masterson, the sum of $582.36; which voucher was approved by G. A. Welhausen, County Judge of said La Salle County.

"And whereas, the said T. S. Masterson, the payee in said voucher, before the maturity of the said voucher, for value, sold and transferred the said voucher to Edith Buckley.

"And, whereas, in the above styled and numbered cause, of O. T. Howard, vs. T. S. Masterson, filed to No. B–70958, in said 45th District Court, of Bexar County, Texas, A. H. Rife was appointed by said court as receiver of the properties of the said T. S. Masterson, wherein the said Edith Buckley filed her petition of intervention, presenting her said claim in the said receivership, which petition of intervention she filed also as a cross petition against the said School District and against the other cross defendants therein named.

"And, whereas, on April 21, 1936, in the said receivership suit, an order was made and entered in and by said 45th District Court, adjudicating and establishing the claim of the said Edith Buckley as a valid and just claim against the above named defendant and against the properties in the custody of said receiver, and directing said receiver to pay the same out of funds available thereto in his charge.

"Now, this instrument witnesseth, that I, Edith Buckley, a feme sole, of Bexar County, Texas, the owner of the said claim, do hereby acknowledge to have this day received from the said A. H. Rife, receiver of the properties of the said T. S. Masterson, the sum of $807.44; the same being payment to me in full of the said principal sum of $582.36, together with $150.78, as the interest thereon at the rate of six

per cent per annum from March 30, 1932 to this date and $74.30 as costs incurred and paid by me in the matter of said petition of intervention and cross-petition, and for and in consideration of such payment to me, I hereby assign and transfer, without any recourse on me, to the said A. H. Rife, receiver, as aforesaid, and to his assigns, all of my right, title, and interest in and to said voucher and said claim, and in and to every claim that I have or may have against any and all of the cross-defendants in my said petition of intervention.

"Witness my hand; dated this, the 23rd day of July, 1936.

"Edith Buckley."

We accept as true all the fact recitations in this instrument. Edith Buckley filed her intervention on the 19th day of March, 1936, praying for judgment for the amount of her warrant against appellee and its board of trustees, as drawers, Stockmen's National Bank, as drawee, and T. S. Masterson, as indorser, and others not necessary to mention.

The warrant thus assigned was issued by Fowlerton Consolidated School District No. 1, hereinafter referred to as appellee, and delivered to Masterson as a refund of taxes paid by him to appellee on property belonging to him, under the mutual mistake that his property was within the limits of appellee, the school district; the amount of the taxes were regularly assessed against Masterson's property by appellee for the years 1911–1926; he paid the taxes in good faith and appellee accepted them in good faith. When it was discovered that Masterson's property was not within the limits of the school district, appellee, in an effort to refund him his taxes, executed and delivered to him the warrant in issue.

On the same day that Edith Buckley assigned the warrant to Rife, the receiver, by an instrument in writing of that date he assigned it to appellant, C. M. Frost; this instrument recited generally the facts recited in the Buckley assignment and further as follows:

"Now, therefore know all men by these presents, That I, A. H. Rife, Receiver of the properties of the said T. S. Masterson, and acting in that capacity and under and by virtue of the authority and direction given in that certain order of sale dated April 20th, 1936, and order of confirmation dated July 22nd, 1936, and entered in that certain suit hereinabove referred to, and in

consideration of the sum of eight hundred seven and ($807.44) 44/100 dollars paid to me by C. M. Frost, of Harris County, Texas, the same being payment to me in full of said principal sum of Five Hundred, Eighty-two and 36/100 ($582.36) Dollars, together with one hundred fifty and ($150.-78) 78/100 dollars, as the interest thereon at the rate of six per cent per annum from March 30th, 1932, to this date, and the sum of seventy-four and ($74.30) 30/100 dollars as incurred and paid by Edith Buckley in the above styled and numbered cause, have sold, assigned, transferred and set-over and by these present do sell, assign, transfer and set-over unto the said C. M. Frost the said voucher, claim and cause of action, hereby subrogating the said C. M. Frost to all the rights of T. S. Masterson and A. H. Rife, Receiver of the properties of T. S. Masterson, in and to all rights, titles, claims and interests under and by virtue of said voucher and said claim, against all the makers, sureties, endorsers, guarantors or other obligors thereon, with full right in the said C. M. Frost to be substituted as party plaintiff and to continue the prosecution of said claim against the above named parties, other than the said T. S. Masterson.

"Witness my hand this the 23rd day of July, A. D. 1936.

"A. H. Rife, Receiver of the properties of T. S. Masterson."

We adopt as true the fact recitations in this assignment.

On the 20th day of July, 1936, the district court of Bexar county sustained the pleas of privilege filed by appellee and all the other defendants named by Edith Buckley in her intervention, except T. S. Masterson and his receiver, and transferred the case as to them to the district court of La Salle county where it was docketed, No. 2294, O. T. Howard, Plaintiff v. T. S. Masterson et al., Defendants.

On the 25th day of September, 1936, appellant, C. M. Frost, filed his intervention in cause No. 2294 on the docket of the district court of La Salle county, pleading the assignment of the warrant by Masterson to Edith Buckley, her assignment to Rife, the receiver, and the receiver's assignment to him; that the issuance of the warrant was duly authorized by appellee; that it was presented to the drawee for payment, etc.

The defendants answered the Frost intervention by pleas in abatement and de-murrers, which were overruled, general denial, and specially raising the issues of law hereinafter discussed.

On trial to the court without a jury on the 25th day of September, 1936, appellant dismissed from his intervention all defendants except appellee and those acting officially with it in the issuance of the warrant; the court found in favor of appellee on its plea of limitation of four years and, on that finding, rendered judgment that appellant recover nothing, and that appellee go hence without day and recover its costs. From that judgment appellant, Frost, prosecuted his appeal to the San Antonio Court of Civil Appeals; the case is on our docket by order of transfer by the Supreme Court.

## Opinion.

On the following propositions of law the warrant when issued and delivered to Masterson and by him transferred to Edith Buckley was a valid obligation against appellee:

First. The payment of the tax, by Masterson through a mutual mistake, on property not within the school district was not a "voluntary payment" within the rule denying recovery for taxes paid voluntarily and without compulsion. The general rule is thus stated by 61 C.J. 985: "It is a well settled general rule that, if a wrongful or illegal tax is paid by the person assessed voluntarily and without compulsion, it cannot be recovered back in an action at law, or by way of set-off, unless there is some constitutional or statutory provision expressly or impliedly giving him such right, although the tax is paid without compulsion, and this rule has been applied even though payment was made under protest. But the rule does not apply to a tax paid on land wholly outside the taxing jurisdiction of the county levying the same, nor does it apply where the particular tax has been set aside by a judicial decision; and it cannot be invoked to defeat a suit by the United States to recover taxes illegally collected from its Indian wards on land allotted them."

In Pederson v. Stanley County, 34 S.D. 560, 149 N.W. 422, 423, the court said: "It is the contention of appellant that under the general rule that taxes voluntarily paid cannot be recovered the respondent was not entitled to recover a judgment for the said amounts so paid to Stanley county. We are of the view that the said rule has no application to the facts

of this case. The property of respondent was wholly outside of the taxing jurisdiction or taxing district of Stanley county, and was therefore not taxable at all in that county, and the amounts so paid by respondent to said Stanley county were in fact not a tax at all. Stanley county was wholly without jurisdiction or authority to levy and collect such sums as a tax against the property of respondent."

Second. The fact that the taxes paid by Masterson—the very money paid by him—had been expended by appellee and was not in its possession when the warrant was issued did not take from its trustees the power to issue the warrant. Bridgeport & etc. v. City of Bridgeport, 103 Conn. 249, 130 A. 164, 169, involved taxes paid for the years 1915–1922 on property not within the limits of the taxing district; after holding that the taxes were not "voluntarily" paid, the court said: "The remaining reasons of appeal relate to claims that the defendant, having received the money, mingled it with its general funds, expended it for municipal purposes, and, not having in its possession the identical funds, the taxpayers, who were not such when the plaintiff paid the money, cannot be now called upon, or taxed, to pay it back, and therefore the court erred in rendering judgment for the plaintiff. The defendant says that because it has not the identical money it received from the plaintiff it should not be required to return it. It claims as a principle of law that, because it has spent the money, received no matter how wrongfully or unconscionably from the plaintiff, it cannot now be recovered back. The mere statement of such a proposition seems to be a sufficient refutation of it. Where a party receives money from another which in equity and good conscience it ought not to keep it cannot, by spending it, escape the liability to repay it. The law reaches further than to the identical coins and bills which are received. The defendant city is not the agent of the taxpayers. It is the inhabitants, including the taxpayers, acting under a charter as a municipal corporation with perpetual existence. As such corporation it has acted, levied the tax, and received the money. It has no shadow of right in good conscience to retain the money so paid. The plaintiff brought the action as soon as it discovered the error. Neither the mistake of the plaintiff in paying, or the good faith of the defendant in receiving, nor the fact that the money has been spent, gives the defendant any equitable right to retain the money. Gilpatric v. Hartford, supra [98 Conn. 471, at page] 481 [120 A. 317]."

Third. Appellee had the power to renew Masterson's claim for a refund of the taxes against any defense of limitation that might have been available to it. Under the holding of our Supreme Court in Hatcher v. State, 125 Tex. 84, 81 S.W. 2d 499, 98 A.L.R. 1213, appellee is a body politic and corporate, and may contract and be contracted with, sue and be sued, and, in its limited sphere, is a local public corporation of the same character as a municipal corporation; as such, it had the power to renew and extend a past-due obligation, though barred by limitation. City of Tyler v. Jester & Co. (Tex.Civ.App.) 74 S.W. 359, affirmed 97 Tex. 344, 78 S.W. 1058; City of Houston v. Jankowskie, 76 Tex. 368, 13 S.W. 269, 18 Am.St.Rep. 57.

Fourth. Appellee had the power to issue and deliver the warrant without levying a tax to liquidate it, as provided by article 11, § 5, of the Constitution. This constitutional provision had no relation to Masterson's claim against appellee. The issuance of the warrant did not create a debt against appellee, but was nothing more than a renewal and extension of a pre-existing debt, a valid obligation which Masterson could have prosecuted to judgment. City of Tyler v. Jester, supra; Harlingen Independent School District v. Page & Bro. (Tex.Com.App.) 48 S.W.2d 983.

Five. On its face the warrant was to be paid, "Out of the Maintenance Fund for Refund on taxes erroneously paid 1911 to 1926, inclusive." Appellee had the power to direct that this warrant be paid from the maintenance fund. The expenditure of the school fund received by a school district from the state is governed by section 1 of article 2827:

"The public free school funds shall not be expended except for the following purposes:

"1. The State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year become available; provided that no loans for

the purpose of payment of teachers shall be paid out of funds other than those for the then current year."

Under this restriction, possibly appellee could not have paid the warrant from the state and county funds, but appellee had other funds derived from local taxes, tuition fees, and, etc. The expenditure of these funds falls within the provisions of section 2 of article 2827, which provides: "Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employees, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the State available school fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein."

In Adams v. Miles (Tex.Com.App.) 35 S.W.2d 123, 127, the Commission of Appeals held that article 2827 authorized school trustees to use the maintenance fund "for any reasonable purpose deemed by them sufficient, having relation to the conduct of the schools in that district." See, also, Churchill v. Board of Trustees, Ky., 89 S.W. 122, 124, where it is said: "In creating these corporations the Legislature did not contemplate, in defining their powers, to prevent them from being just, or to take away from them the power to do right when an innocent mistake had been made. The power to conduct the school necessarily carries with it the power to meet those obligations which are justly incurred in conducting the school."

■ By her intervention, filed before the warrant was barred by limitation, Edith Buckley prayed for judgment against appellee, the drawer, and Masterson as assignor; alternatively, if the warrant was void, she prayed for judgment against Masterson on his implied warranty of its validity. Neither Masterson nor his receiver filed any answer in the Buckley intervention. In rendering judgment in this case for appellee, it was the theory of the trial court that the judgment of the district court of Bexar county approving Edith Buckley's claim against Masterson and ordering it paid, and her assignment of the warrant to Rife as receiver, liquidated the warrant and extinguished her cause of action; and that the filing by appellant of his intervention in this cause was the institution by him of a new suit. In these conclusions the lower court was in error. By her assignment to Rife as receiver, Edith Buckley transferred to him the warrant and her cause of action against appellee, which he in like manner assigned to appellant. The filing by appellant of his intervention in this cause of action was not the institution of a new suit but the prosecution by him in his own name of the action timely instituted by Edith Buckley. He held her cause of action under a regular assignment and had the right to prosecute it in his own name. Leach v. Michigan Realty Company (Tex.Civ.App.) 97 S.W.2d 331; Russell v. People's National Bank (Tex.Civ.App.) 2 S.W.2d 961; Southwestern Advertising Co. v. Stubbs (Tex.Civ.App.) 89 S.W.2d 799.

■ Appellee makes the further point that Edith Buckley by her intervention did not state a cause of action against Masterson on his assignment of the warrant. The point is not available to appellee. Masterson and his receiver were satisfied with the judgment of the district court of Bexar county adjudging him liable on his assignment. But the claim was not approved by the court or paid by Masterson in liquidation of the warrant and in satisfaction of Edith Buckley's cause of action against appellee, but as a mere liability against the Masterson estate. On consideration of the payment to her of the amount of the warrant, she assigned her cause of action to the receiver; and, on the payment to him of the same consideration, the receiver assigned it to appellant.

From what we have said, it follows that the judgment of the lower court against appellant must be reversed and judgment here rendered in his favor for the sum of $582.-36 with interest at the rate of 6 per cent. per annum from the 30th day of March, 1932.