### SAN ANTONIO INDEPENDENT SCHOOL DISTRICT and City of San Antonio

v.

### NATIONAL BANK OF COMMERCE OF SAN ANTONIO.

No. 16540.

Court of Appeals of Texas, San Antonio.

Sept. 30, 1981.

Rehearing Denied Nov. 18, 1981.

Peter Torres, Jr., Baldemar A. Jiminez, San Antonio, for appellants.

William R. Simcock, Charles Hanor, Cox & Smith, Inc., San Antonio, for appellee.

Before CADENA, C.J., and KLINGE-MAN, J.

## OPINION

KLINGEMAN, Justice.

This is a suit by the National Bank of Commerce (Bank) against the City of San Antonio (City) and the San Antonio Independent School District (School District) for recovery of an alleged overpayment of ad valorem taxes for the year 1976. The Bank sought a refund contending an overpayment was made through a mutual mistake. The trial court judgment, based on the jury's verdict,[1] ordered that the Bank recover from the City and the School District a total of $51,458.95. The defendant moved for judgment non obstante veredicto which was denied by the trial court. We affirm the judgment of the trial court.

The City's and the School District's, appellants herein, basic contention in this appeal is that the trial court erred in denying their motion for judgment non obstante veredicto because (1) appellee was negligent in failing to ascertain the correctness of the tax statement prior to paying the assessed taxes, and because of such negligence appellee's payment of tax as billed was a unilateral mistake which would preclude any refund; (2) appellee's payment of tax as billed was voluntary, and such voluntary payment would preclude any refund; and (3) there is no statute authorizing the refund.

Appellants also assert that (A) there was no evidence to support the jury's answer to Special Issue No. 2; (B) appellee failed to exhaust administrative remedies and did not properly appeal the valuation of the

Board of Equalization; and (C) the collection of the tax was validated by the legislature.

A judgment non obstante veredicto is authorized only when there is no evidence warranting the submission of the issue to the jury, and when there is no evidence to support the jury's answer to such issue. *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206 (1950). Jury findings may not be disregarded if the record contains any evidence of probative value which will reasonably support the finding. *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273 (1958); *Frost Nat'l Bank v. Nicholas & Barrera*, 534 S.W.2d 927 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

Appellee contends that the trial court judgment was correct and should be affirmed because (1) the record does not establish negligence as a matter of law but, to the contrary, there is sufficient evidence to support the submission of, as well as, the jury's findings to Special Issue No. 2; and (2) the Bank's payment of the taxes was without knowledge of their excessiveness, a result of a mutual mistake, and not a voluntary payment.

Tex.Rev.Civ.Stat.Ann. art. 7166 (Vernon 1960) provides for the assessment of real estate by a bank and requires that each share in such bank shall be taxed only for the difference between its actual cash value and the proportionate amount per share at which its real estate is assessed. The testimony given in the trial court shows the usual and accepted method used to assess and tax bank property. Each bank is required to provide certain information to the tax assessor in order to arrive at the value of the total capital structure of the bank. The bank is also required to provide a list of real estate properties it owns and a market value is placed on each. The total value of

---

1. The jury in response to two special issues found (1) that the taxes were computed on the basis of a total property value of $36,035,060 (as billed) instead of $33,229,969 (as rendered) as a result of an error in applying the formula used by the Tax Assessor in determining taxes for banks and (2) that Eidson, when he paid the taxes, did not know or should not have known that such taxes were computed on total property values of $36,035,060 (as billed) instead of $33,229,969 (as rendered).

the real estate is subtracted from total capital accounts, and the remainder is considered personalty. The net effect is that the bank is taxed on the value placed on its total capital accounts, regardless of the respective values placed on realty and personalty. The taxing authority then applies an assessment ratio and a tax rate to arrive at the taxes owed by the bank.

On May 14, 1976, Jeff Gordon, the City Treasurer, sent a letter to the Bank requesting a Statement of Condition as of May 31, 1976, and other information necessary to assessing property taxes for both the City and the School District. In response, the Bank's comptroller, Jack Eidson, Jr., supplied the requested data, including a statement of the Bank's capital accounts which totalled $33,229,969. In October, 1976, the Tax Assessor sent Notices of Tax Valuation to the Bank, one of which listed the Capital Structure Value of Shares at $25,260,750. The other notices listed market values of two separate pieces of property at $2,281,039 and $1,012,537, apparently reflecting recent improvements which had been made on the properties.

On July 29, 1977, the Bank paid its taxes to the Tax Assessor for the tax year 1976 in response to six (6) statements sent to the Bank. The total tax paid by the Bank was $661,062.96. Around the end of September, 1977, a Bank employee made some calculations and realized the Bank had been taxed on a total property value of $36,035,060 instead of the $33,229,969 amount it had originally rendered in May of 1976. Jack Eidson telephoned Jeff Gordon, the City Treasurer, in late September, to discuss the alleged overpayment. Gordon suggested Eidson put his problem in writing. Eidson then wrote a letter addressed to the City Treasurer, dated October 5, 1977, in which he explained the matter and requested a refund. The refund was never made and the Bank brought this suit.

It is the Bank's contention that, after it had rendered its total capital structure value of $33,229,969, the change in value of certain real estate properties owned by the Bank caused the tax assessor to revalue such properties. The Bank contends, however, the tax assessor failed to make a necessary corresponding counteradjustment to the personalty. This resulted in the alleged overpayment by the Bank.

We first consider appellants' contention that appellee was negligent as a matter of law and that there is no evidence to support the jury's findings to Special Issue No. 2. It is obvious that Jack Eidson, the Comptroller for the Bank made a mistake in paying the tax as billed to the Bank for 1976. It is undisputed that the amount billed and paid was excessive in the amount of $51,458.95. It is equally clear that the taxing agency did not intend to overcharge the Bank for taxes for the year involved and that such overcharge was due to a computation error made in the taxing offices. Eidson's explanation of why he paid the taxes as billed was that at the time he paid the tax he did not have all the necessary information to properly figure the total amount of the tax. He further testified that his office found the error later after the taxes had been paid. Eidson rendered a total property value of $33,229,969 around May of 1976. The form sent to Eidson from the taxing authorities requesting such information states: "NOTE: Tax Assessor will complete computations involved and advise of assessment." In October 1976, Eidson received Notices of Valuation of Personalty and on two of the six pieces of real property to be taxed. These notices did not indicate that the total tax liability of the Bank was to be increased. Eidson later received the tax bill in the form of six separate statements. Nowhere on such statements was the valuation of the properties listed—only the amount of the tax due, broken up into six separate figures, was shown. Eidson then paid this amount in July 1977, assuming it was the proper tax to be paid on the $33,229,969 value he had rendered several months previously. He did not know that it was computed on a total property value of $36,035,060. The rendering and billing system was further complicated by the fact that the City and School District each used different assessment ratios and rates.

Under the record, there is sufficient evidence to support the jury's finding that Eidson did not or should not have known the taxes were to be computed on the larger figure rather than the smaller.

■ Appellant further urges that the Bank is precluded from obtaining a refund because payment of the taxes was voluntary. It is the general rule that one who pays a tax voluntarily cannot enforce a claim for its recovery. *City of Houston v. Feizer*, 76 Tex. 365, 13 S.W. 266 (1890); *Johnson Controls, Inc. v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 605 S.W.2d 688 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r. e.), *Amplifone Corp. v. Cameron County*, 577 S.W.2d 567 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Howell v. City of Dallas*, 549 S.W.2d 36 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.); *Rainey v. City of Tyler*, 213 S.W.2d 57 (Tex.Civ.App.—Texarkana 1948, writ ref'd n.r.e.). If we apply the general rule stated above the Bank cannot recover. There are, however, some exceptions to such general rule.

The Bank urges that this is an exception to the general rule because its payment was made without knowledge of its excessiveness and as a result of mutual mistake. The Bank contends that most of the cases where recovery is denied involve situations where the taxpayer, although claiming illegality, knowingly paid the illegal tax without protest, or under protest without stating any specific objections. Bank acknowledges that a payment made with full knowledge of all the facts is not an involuntary payment and will preclude recovery and urges that the correct rule is set forth in *Rainey v. City of Tyler*, 213 S.W.2d 57 (Tex.Civ.App.—Texarkana 1948, writ ref'd n.r.e.), as follows: "The general rule is that in the absence of fraud, imposition, undue influence and the like, money paid with full knowledge of the facts but under a mistake of law cannot be recovered back."

We think the proper rule to be applied here is that set forth in *Frost v. Fowlerton Consol. Sch. Dist. # 1*, 111 S.W.2d 754 (Tex. Civ.App.—Beaumont 1937, no writ), in which the taxpayer paid taxes to the school district because the property on which such taxes were paid was mistakenly thought to be located within the district. The court stated "[t]he payment of the tax, by Masterson, through a mutual mistake, on property not within the school district was not a 'voluntary payment' within the rule denying recovery for taxes paid voluntarily and without compulsion".

■ In the case herein a mutual mistake was made. Neither the taxing agency nor the taxpayer intended that an overpayment of $51,458.95 be made. While the initial error was made by the taxing agency in the calculation and computation of the tax, the Bank's payment did not fall in the category of a payment made with full knowledge of all the facts as the Bank was unaware that it was paying taxes on a valuation different from what it rendered. Such payment was not a voluntary payment within the rule denying recovery for taxes paid voluntarily and with compulsion. This case differs from those in which the general rule regarding voluntary payment of taxes applied. Such cases involved situations wherein the taxpayer knew that the taxes it paid were greater than it claimed the taxes should have been. Here the taxpayer Bank was unaware it was paying taxes on a valuation different from what it had rendered. Therefore, the refund is not barred by the general rule pertaining to voluntary payment of taxes.

We see no justification for the taxing agency being awarded a windfall recovery of $51,458.95 because of a mutual mistake made by the parties which was not the intention of either of the parties.

The arguments and authorities cited by appellant in support of its other points of error are not persuasive. We find them without merit.

All of the appellants points of error have been considered and all are overruled. The judgment is affirmed.

ESQUIVEL, J., not participating.