ROBERT SCHIRMER ET AL. *v.* ANTONE SOUZA, SR., ET AL.
(AC 31788)

DiPentima, C. J., and Bishop and Dupont, Js.

Argued November 29, 2010—officially released February 22, 2011

*Stephanie B. Nickse*, with whom, on the brief, were *Jack D. Garamella* and *Thomas W. Beecher*, for the appellants (defendants).

*Frank J. Scinto*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. The defendants, Antone Souza, Sr., and Dorothy Souza, appeal from the judgment of the trial court in favor of the plaintiffs, Robert Schirmer and Sandra Schirmer, on their claim of unjust enrichment arising out of renovations to a house on property owned by the defendants. On appeal, the defendants claim that the court improperly (1) applied the doctrine of unjust enrichment to parties who had no contractual relationship, (2) found that the plaintiffs' funds were spent to renovate the defendants' real property, (3) found that the defendants realized a profit from the sale of the property, (4) found that, by profiting from the sale, they accepted the benefit of the renovations, and (5) found that the plaintiffs proved the amount of the benefit. We affirm the judgment of the trial court.

Following a trial to the court, the court issued a memorandum of decision that set forth the following relevant factual history. The defendants' son, Antone Souza, Jr., was married at the time to the plaintiffs' daughter, Lori Souza (couple). The couple purchased the subject property in 1994 for $200,000. The purchase was financed with an interest only purchase money note for $150,000, with a balloon payment due in 1999, and a $50,000 second mortgage loan from the defendants. When the couple was unable to make the balloon payment, the defendants bought the property from the couple for $160,000 on March 10, 1999. Although title transferred to the defendants, they agreed to permit the couple to remain in the house in exchange for making mortgage payments on the defendants' loan, which the couple did only sporadically.

Early in 2001, the couple decided to add a second floor to the 1300 square foot ranch house on the property and asked the plaintiffs for help in financing the project. The plaintiffs were unaware at the time that record title had been transferred from their daughter's name to the defendants. Antone Souza, Jr., proposed a budget of $75,000 for the renovation, expecting to do most of the labor himself. Plans were drawn and proper permits and approvals were obtained. On the day that he began renovations in April, 2001, he unilaterally decided to tear down the entire house instead and to build a new house on the site. Ultimately, during 2001 and 2002, the shell of a 3600 square foot, two-story colonial was built, fully framed and with windows and doors installed, but the interior of the house and the attached two-story garage were not finished. From April, 2001, to December 9, 2002, the plaintiffs loaned the couple $86,169.50, of which $73,052.74 was used for the renovations to the house.

The house was listed for sale early in 2003, at which time the plaintiffs first became aware that the defendants held title to the property. In March, 2003, the plaintiffs sent the defendants a proposed agreement seeking $130,000 in compensation for the funds that were used to renovate the defendants' property. The defendants refused to sign the agreement but told the plaintiffs to trust that they would take care of them when the property was sold. On November 25, 2003, the defendants sold the property, including the unfinished house, for $400,000. Contrary to the defendants' promises, the plaintiffs were paid nothing by the defendants.

The procedural history of the case is as follows. Once the plaintiffs realized that no proceeds from the sale of the property were forthcoming to them, they applied for a prejudgment remedy and filed a complaint on May 29, 2008, alleging that the defendants were unjustly enriched in the amount of $104,450 to the detriment of

the plaintiffs. The case was tried before the court on September 3 and 4, 2009. On September 28, 2009, in a memorandum of decision, the court rendered judgment in favor of the plaintiffs in the amount of $76,169.50. The defendants filed a motion to reargue on October 14, 2009, and the court heard reargument on November 16, 2009. On December 1, 2009, in a memorandum of decision, the court opened the original judgment and reduced the amount of the award, rendering a final judgment of $73,052.74 in favor of the plaintiffs. This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the legal principles that govern a claim of unjust enrichment. "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . .

"This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did [the party liable], to the detriment of someone else, obtain something

of value to which [the party liable] was not entitled?
. . .

"Our review of the trial court's conclusion that the defendant was unjustly enriched is deferential. The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

I

The defendants first claim that the court improperly concluded that the plaintiffs were entitled to a judgment against the defendants premised on unjust enrichment where there was no contractual relationship between the parties. In other words, they claim, as a matter of law, that a contractual relationship is a prerequisite to recovery based on unjust enrichment. We do not agree.

"We note at the outset that our analysis of whether the court applied the correct legal standard is a question of law subject to plenary review." (Internal quotation marks omitted.) *Breen* v. *Judge*, 124 Conn. App. 147, 158, 4 A.3d 326 (2010). In support of their claim, the defendants cite *Gagne* v. *Vaccaro*, 255 Conn. 390, 766 A.2d 416 (2001), in which our Supreme Court reiterated the common-law principle that when a contract is present, "lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment." Id., 401. Contrary to the defendants' assertion, however,

*Gagne* does not address the availability of recovery under the theory of unjust enrichment when no contract is present, nor does it posit that a contractual relationship is a prerequisite to recovery for unjust enrichment. Indeed, it affirms earlier decisional law that "quantum meruit and unjust enrichment are common-law principles of restitution; both are contractual means of recovery without [a] valid contract . . . ." Id. *Gagne*, therefore, merely precludes recovery for unjust enrichment in circumstances in which a contractual remedy is already available. Its holding is of no avail to the defendants.[1]

We note, additionally, that the doctrine of unjust enrichment is grounded in the theory of restitution, not in contract theory. As this court stated in *Burns* v. *Koellmer*, 11 Conn. App. 375, 527 A.2d 1210 (1987), "[b]oth unjust enrichment and quantum meruit are doctrines allowing recovery on the theory of restitution, that is, the restoration to a party of something of which he was deprived because of the unjust enrichment of another at his expense. See G. Palmer, 1 Restitution (1978) § 1.1. . . . Broadly speaking, the availability of restitution is dependent upon unjust enrichment, that is, upon a perceived injustice because one party has benefited at the expense of another. In a narrower

---

[1] The court's recognition of this "precondition" in *Gagne* was expressly based on 12 S. Williston, Contracts (3d Ed. 1970) § 1479, p. 272, which states that "wherever justice requires compensation to be given for property or services *rendered under a contract*, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed." (Emphasis added.) See *Gagne* v. *Vaccaro*, supra, 255 Conn. 401; 26 S. Williston, Contracts (4th Ed. Lord 2003) § 68:4, p. 57. Logically, the articulation of the doctrine of unjust enrichment in a treatise on contracts must be focused on how the doctrine applies to benefits "rendered under a contract . . . ." 12 S. Williston, supra, § 1479, p. 272. This does not imply that the doctrine has no application in the absence of a contract. In fact, in *Gagne* itself, although both parties had contracted with the same third party, they were not in a direct contractual relationship with each other. Nonetheless, the court held that the plaintiff could recover for unjust enrichment. See *Gagne* v. *Vaccaro*, supra, 391–94.

sense, unjust enrichment has been the form of action commonly pursued in this jurisdiction when the benefit that the enriched party receives is either money or property." (Citations omitted; internal quotation marks omitted.) *Burns* v. *Koellmer*, supra, 383–84. The other form of action for restitution is quantum meruit, "which has been utilized when the benefit received was the work, labor, or services of the party seeking restitution." Id. Our Supreme Court has also noted that a "claim for unjust enrichment is sometimes denominated [an] implied in law claim or quasi-contract claim . . . ." (Citation omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 574, 898 A.2d 178 (2006). Citing *Burns*, it has summarized that unjust enrichment, quantum meruit and quasi-contract are all "based upon common law principles of restitution, [and] are all noncontractual actions by which a party may recover despite the absence of a valid contract . . . ." (Citations omitted.) *Sidney* v. *DeVries*, 215 Conn. 350, 351–52 n.1, 575 A.2d 228 (1990).[2]

Indeed, the Restatement of Restitution (1937) recognizes various situations in which unjust enrichment may be present in the absence of a contractual relationship, including, inter alia, mistaken belief as to the existence of a noncontractual duty to pay (§ 19), mistake as to payee (§ 22), improvements on land or chattels based on mistake of fact (§ 42), gratuitous transactions based on mistake of law (§ 49), and performance of another's common-law duty to supply necessaries to a third person (§ 113). Likewise, our decisional law recognizes applications of the doctrine of unjust enrichment in the absence of a contract. See, e.g., *Yale Diagnostic Radiology* v. *Estate of Fountain*, 267 Conn. 351, 360, 838 A.2d 179 (2004) (because of "the law's disfavor of unjust enrichment," plaintiff supplying emergency medical necessaries to minor entitled to compensation

---

[2] This statement was cited, in turn, by the court in *Gagne* v. *Vaccaro*, supra, 255 Conn. 401.

primarily from parents and secondarily from minor's estate); *Misisco* v. *La Maita*, 150 Conn. 680, 681–84, 192 A.2d 891 (1963) (landowner unjustly enriched when he induced potential buyer to make substantial alterations and improvements to property); *Gilpatric* v. *Hartford*, 98 Conn. 471, 480–81, 120 A. 317 (1923) (money paid by mistake to wrong payee recoverable). Although the defendants cite three cases in which our trial courts did, in fact, reject claims of unjust enrichment on the ground that there was no contractual relationship between the parties,[3] we are guided by ample appellate decisional precedent and legal authority that a contractual relationship is not a prerequisite to recovery based on unjust enrichment.[4] Accordingly, the claim fails.

## II

We turn next to the defendants' claim that the court improperly found that the plaintiffs' funds were spent

[3] See *Shoreline Care Ltd. Partnership* v. *Jansen & Rogan Consulting Engineers, P.C.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X06-CV-94-0155982-S (November 15, 2002) ("[w]hen there is no allegation of a contractual relationship between the plaintiff and the defendant, the claim for unjust enrichment must fail"); see also *Febles* v. *Chyung*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-01-0184417-S (August 29, 2002); *Stamboulis* v. *Sullivan*, Superior Court, judicial district of Hartford, Docket No. CV-01-0806114-S (July 30, 2001).

[4] Also in support of this claim, the defendants cite *Chatfield* v. *Fish*, 126 Conn. 712, 10 A.2d 754 (1940), which bears certain factual similarities to the present case. The plaintiff in *Chatfield* provided services and furnished materials at the request of the occupant of certain property. Id., 712–14. When the occupant failed to compensate the plaintiff fully, he sought compensation from the landowner, who had known that services were being rendered and material furnished to benefit the property. Id. In a per curiam opinion, our Supreme Court rejected the plaintiff's claim of unjust enrichment, stating that there was no equitable ground on which he could recover because he trusted the credit of the occupant "without thought of liability on the defendant's part." Id., 713. Despite the factual similarities, however, *Chatfield* is inapposite to our analysis of this claim because it did not turn on the presence or absence of a contract but, rather, on the factual determination of the equities under the circumstances.

on renovations to the defendants' real property. We are not persuaded.

As stated previously, the factual findings of the trial court must stand unless they are clearly erroneous or involve an abuse of discretion. *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 452. In their brief, the defendants argue that the court incorrectly ignored inconsistencies between checks written from the plaintiffs' checking account to their daughter, Lori Souza, itemized renovation expenses, checks written from Lori Souza's checking account and her checking account statements in the period from April 13 to June 20, 2001. They also contend that the court incorrectly weighed testimony concerning the expenditures and neglected to consider that the plaintiffs' funds were commingled in Lori Souza's checking account with the couple's earnings.

We note that although the plaintiffs alleged that the total amount loaned to the couple for the renovations was $105,750.08 and introduced into evidence copies of checks from their account written in 2001 and 2002 totaling $86,169.50, the court found that the lesser amount of $73,052.74 of the plaintiffs' funds was spent on the renovations. In making this finding, the court considered all receipts, written checks and itemized expenses in evidence and rejected any that were unrelated to the renovations. It also expressly took into account the scope of the renovations, the fact that Antone Souza, Jr., routinely failed to keep receipts and the varying testimony as to the costs of labor and materials in installing a fireplace and chimney. Then, following reargument on this issue, the court recognized certain duplications among the itemized expenses and reduced its calculation accordingly. On the basis of our review of the record and in light of the court's detailed reasoning, we conclude that its finding as to the sum of the

plaintiffs' funds spent on renovations was not clearly erroneous.

### III

We turn next to the defendants' claim that the court improperly found that the defendants realized a profit from the sale of the property. They assert that they acquired the property to serve as security for their loans to the couple and, consequently, had priority as secured creditors to reimburse themselves before covering the plaintiffs' unsecured losses. They further claim that, because the amounts owed to them by the couple exceeded the proceeds of the sale, no profit was realized from which to compensate the defendants. We are not persuaded.

As noted, the factual findings of the trial court must stand unless they are clearly erroneous or involve an abuse of discretion. See *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 452. The court accounted for the defendants' underlying debts in the property when calculating their profit on the sale. Subtracting their two mortgages, closing costs and liens on the property from the sale price of $400,000, it found that the defendants realized a profit of $177,000. It found, however, that the other funds that they had loaned to the couple were unrelated to the property and, consequently, that the reimbursement of such funds was a personal benefit, not a legal entitlement. For example, observing that the defendants applied the sale proceeds to settle credit card debt, the court found that "[e]ven assuming arguendo that the debt was incurred by another party, it is clear that it was to Dorothy Souza's benefit to pay off significant credit card debt that was in her name . . . ." It concluded that the defendants had realized a significant profit from the sale of the renovated property, adding that "[i]t is irrelevant if the defendants subsequently gave the

money to charity, put it in the bank or gave it to their children."

Our review of the record supports the court's factual conclusions in this regard. No secured loan agreement between the defendants and the couple was in evidence. Rather, the record reveals that the defendants funded the couple by personal checks and a credit card in the name of Dorothy Souza. There is no indication, apart from their bare assertion, that these loans were secured by the property. For the foregoing reasons, we conclude that the court's finding that the defendants realized a profit from the sale was not clearly erroneous.

## IV

We turn next to the defendants' claim that the court improperly found that, by realizing a profit from the sale of the property, the defendants accepted the benefit of the renovations. They contend that they were not unjustly enriched because they did not want the renovations, refused to pay for them and neither knew of nor accepted the plaintiffs' contributions.

A trial court's determinations of whether the defendants were benefited and whether their failure to pay was unjust are factual findings that must stand unless they are clearly erroneous or involve an abuse of discretion. *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 452. As a general rule, for the benefit to be unjust, the defendant must have solicited it. "This doctrine [of unjust enrichment] is inapplicable where the payment has been made 'officiously,' i.e., where the circumstances do not justify the interference with another's affairs resulting from conferring a benefit upon him." *Wesson, Inc.* v. *Hychko*, 205 Conn. 51, 57, 529 A.2d 714 (1987). "[W]here a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched." Restatement, Restitution, supra, § 2, comment (a).

Notwithstanding the general rule, "[i]f the plaintiff confers an unsolicited benefit upon the defendant who is not initially required to make restitution, it is possible that the plaintiff could still obtain restitution if the defendant meaningfully 'accepts' the benefit." 1 D. Dobbs, Law of Remedies (2d Ed. 1993) § 4.9 (6), p. 704. For example, when an unsolicited noncash benefit is subsequently realized as cash, it becomes analogous to a mistaken cash payment and amenable to restitution because the defendant "is not being forced to buy a benefit he may not want but on the contrary is asked to return it." Id., § 4.9 (3), p. 686 and § 4.9 (6), pp. 704–705; see also, e.g., *Gilpatric* v. *Hartford*, supra, 98 Conn. 480–81 (money paid by mistake to wrong payee recoverable).

In the present case, although the defendants did not choose to have their property renovated, they realized the benefit of these improvements when the property was sold. The court determined that the defendants accepted this benefit and that justice requires them to return it. On the basis of our review of the record and the court's factual findings, we conclude that the court did not abuse its discretion in so determining.

V

We turn finally to the claim that the court improperly found that the plaintiffs proved the amount of the benefit of the renovations to the defendants.

"[T]he measure of damages in an unjust enrichment case ordinarily is not the loss to the plaintiff but the benefit to the defendant."[5] *Hartford Whalers Hockey*

---

[5] As a point of clarity, the measure of restitution is often referred to as a measure of "damages," although the appropriate term in an analysis of unjust enrichment is "restitution." See *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 460 ("[d]amages are intended to provide a victim with monetary compensation for an injury to his person, property or reputation . . . whereas restitution aims to deprive a defendant of unjustly obtained benefits" [citation omitted; internal quotation marks omitted]).

*Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 285, 649 A.2d 518 (1994). As noted, it is the plaintiffs' burden to prove the elements of a claim of unjust enrichment, including that the defendants were benefited. See *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 451–52. Whether the defendants were benefited is a factual determination that we review under the clearly erroneous standard. Id.

The court found that the defendants realized a profit from the sale of the newly renovated property of $177,000 but awarded recovery of only $73,052.74, which equals the plaintiffs' documented expenditures on the renovations. The defendants claim that neither amount is a proper measure of restitution. They dispute the latter amount on the ground that the benefit to the defendants, not the detriment to the plaintiffs, is the proper measure of restitution. See *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 285. They dispute the former amount on the ground that, although the value of the property demonstrably increased between the 1999 purchase and the 2003 sale, the plaintiffs failed to prove how much of the increase was due to the renovations as opposed to the appreciation of the land.[6] Consequently, they claim that the court lacked a rational basis for measuring the benefit of the renovations to the defendants.

The defendants suggest that to reliably measure the benefit, the plaintiffs were required to introduce evidence of a property valuation from early 2001, prior to

---

[6] In its written decision on the defendants' motion to reargue, the court declined to analyze the defendants' argument regarding the appreciation of the land on the grounds that they had not raised it at trial and had provided no new evidence to compel reconsideration. On appeal, the defendants claim that this ruling improperly shifted the burden of proving the amount of the benefit from the plaintiffs to the defendants. Because we conclude that, even without this information, the plaintiffs provided the court with a sufficient evidentiary foundation to make a fair and reasonable measure of restitution, we need not reach this claim.

the destruction of the original house and the construction of the new two-story shell. Given, however, that such exact evidence is often unavailable in these cases, our decisional law requires only a "reasonable approximation" of the benefit. Id. "Where damages are appropriate but difficult to prove the law eschews the necessity of mathematical exactitude. Such exactitude in the proof of damages is often impossible, and . . . all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) Id.

For example, in *Hartford Whalers Hockey Club*, in which the defendant tire manufacturers had induced the plaintiff hockey club to provide advertising services, the trial court relied on the negotiated price of the plaintiff's services to measure the benefit of those services to the defendants. Id., 284–86. On appeal, the defendants argued that this was an improper basis of measurement and that the plaintiff was required to prove a specific link between the advertising provided by the plaintiff and additional revenues or profits of the defendants generated by the advertising. Id. Our Supreme Court rejected this argument, reasoning that "[t]he theory of damages posed by the defendants' argument would be extraordinarily difficult, if not impossible, to put into practice, because the defendants' revenues would necessarily depend on many factors other than a particular local advertising program." Id., 286. Accordingly, it affirmed the trial court's reliance on the price of the plaintiff's services in deriving a fair and reasonable estimate of the benefit of those services to the defendants. Id., 286–87; cf. *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 519–22, 735 A.2d 813 (1999) (no rational basis for deriving how much employer benefited from refusal to pay employee bonus

when incentive pay had been discussed but no amount ever specified).

In the present case, there was ample evidence to support the trial court's measure of the benefit. There is no question that the property increased in value. The record reveals that the defendants purchased the property in 1999 for $160,000[7] and sold it in 2003 for $400,000. Although some of this increase logically must be ascribed to an appreciation in the value of the land, it was not clearly erroneous for the court to find that a substantial portion of that increase could be ascribed to the renovations of the structures, especially in light of evidence that the plaintiffs' funds were invested primarily not in labor but in materials that became part of the property. Additionally, although the plaintiffs alleged a detriment of $105,750.08, the court awarded restitution of only $73,052.74, which equals the expenditures that the plaintiffs could document with certainty. In other words, because the benefit to the defendants was demonstrable but inexact, the court considered the plaintiffs' expenditures expressly for the purpose of limiting restitution to the amount proved by the plaintiffs, making a fair and reasonable estimate "with such certainty as the nature of the particular case may permit . . . ." (Internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 285. Accordingly, the defendants' claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The defendants have not disputed the court's reliance on the purchase price as an indication of the property's value in 1999, except for pointing out in their motion to reargue, by reference to the plaintiffs' exhibit eight, that they also paid $11,844.11 in closing costs at that time.